**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **COLLECTOR'S COFFEE INC., aka COLLECTOR'S CAFÉ, INC.;** *et al.* | |
| **Plaintiffs,** | **Civ. Action No. 1:20-cv-02988-RBW** |
| **v.** | |
| **DEBEVOISE & PLIMPTON, LLP;** *et al.* | |
| **Defendants** | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER THIS CASE</u>**

Respectfully submitted,

<u>/s/ Dane H. Butswinkas</u>
Dane H. Butswinkas (D.C. Bar No. 425056)
David S. Blatt (D.C. Bar No. 433311)
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
dbutswinkas@wc.com
dblatt@wc.com

*Attorneys for Defendants Debevoise &
Plimpton LLP, Andrew J. Ceresney, Dustin
Brockner, and Miheer Mhatre*

Dated: August 7, 2023

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

      A.     Civil Litigation, the SEC Investigation, and the Retention of Debevoise ..............2

      B.     Debevoise's Legal Services and Discovery of Fraudulent Documents ..................3

      C.     The SEC Enforcement Action and Criminal Indictments........................................5

      D.     Procedural History of This Case .............................................................................6

ARGUMENT ......................................................................................................................10

I.     There Is No Subject-Matter Jurisdiction..................................................................10

II.    The Court Lacks Personal Jurisdiction over Defendants.........................................15

      A.     Defendants Are Not Subject to General Jurisdiction............................................16

      B.     There Is No Basis for Specific Jurisdiction. .........................................................20

III.   The Parties' Engagement Agreement Mandates Arbitration. .................................26

      A.     The Arbitration Provision Is Valid And Enforceable. ..........................................28

      B.     The Complaint Should Be Dismissed. ..................................................................30

IV.   The Complaint Should Be Dismissed Under the Fugitive Disentitlement Doctrine. ........31

V.    Alternatively, the Court Should Transfer This Case to the Southern District of
     New York..................................................................................................................34

CONCLUSION...................................................................................................................38

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Agee v. Sebelius*, 668 F. Supp. 2d 1 (D.D.C. 2009) ........................................................26

*Airport Working Grp. v. DOD*, 226 F. Supp. 2d 227 (D.D.C. 2002) ..............................37

*Akers v. Watts*, 589 F. Supp. 2d 12 (D.D.C. 2008) ..........................................................5

*Aliron Int'l, Inc. v. Cherokee Nation Indus.*, 531 F.3d 863 (D.C. Cir. 2008) ................27

*Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 2006 WL 1793295 (D.D.C.
   June 28, 2006), *aff'd*, 531 F.3d 863 (D.C. Cir. 2008) ................................................30

*Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265 (D.C. Cir. 2014) .............30

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ..............................................29

*Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826 (S.D.N.Y. 1996), *aff'd*, 110 F.3d
   892 (2d Cir. 1997) .......................................................................................................29

*Barcroft v. Gibbs*, 195 F. Supp. 3d 132 (D.D.C. 2016) ..................................................15

*Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174 (D.D.C. 2007) .............................34, 37

*Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38 (D.D.C. 2017) .........................34

*BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549 (2017) .............................................................18, 19

*Booker v. Robert Half Int'l Inc.*, 315 F. Supp. 2d 94 (D.D.C. 2004), *aff'd*, 413
   F.3d 77 (D.C. Cir. 2005) ..............................................................................................27

*Bramson v. Gill*, 2022 WL 2111543 (D.D.C. Apr. 14, 2022) .........................................11

*\*Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255 (2017) ............................. passim

*Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61 (D.D.C. 2003) ..........................27

*Buesgens v. Brown*, 567 F. Supp. 2d 26 (D.D.C. 2008) ...........................................15, 17

*\*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................21, 22, 26

*Calder v. Jones*, 465 U.S. 783 (1984) .............................................................................24

*Comptroller of Currency v. Calhoun First Nat'l Bank*, 626 F. Supp. 137 (D.D.C.
   1985) ...................................................................................................................... passim

*Core VCT Plc v. Hensley*, 59 F. Supp. 3d 123 (D.D.C. 2014) .......................................11

*Crane v. Carr*, 814 F.2d 758, 761 (D.C. Cir. 1987) ................................................26

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ...............................................16, 18, 19

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985)........................................29

*Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367 (D.D.C.), *aff'd*, 2015
WL 9309944 (D.C. Cir. 2015)..............................................................................5

*Duarte v. Nolan*, 2017 WL 7736939 (D.C. Cir. Apr. 18, 2017) (per curiam) ..............19

*Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278 (2d Cir. 1997) ...........................32

*Erby v. United States*, 424 F. Supp. 2d 180 (D.D.C. 2006)........................................10

*Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883 (D.C. Cir. 2021)............................15, 17, 18, 20

*Est. of Klieman ex rel. Kesner v. Palestinian Auth.*, 923 F.3d 1115 (D.C. Cir.
2019) ...............................................................................16, 18, 20, 21

*Exponential Biotherapies v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1 (D.D.C.
2009) ...........................................................................................23, 24

*Feldman v. FDIC*, 879 F.3d 347 (D.C. Cir. 2018)........................................................11

*Flores ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22 (D.D.C. 2006) ..........................11

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) ................................20, 23

*Forras v. Rauf*, 812 F.3d 1102 (D.C. Cir. 2016)........................................................16

*Gold v. Deutsche AG*, 365 F.3d 144 (2d Cir. 2004)....................................................30

*Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227 (D.C. 2006)..............................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)..............................16, 21

*Haire v. Smith, Currie & Hancock LLP*, 925 F. Supp. 2d 126 (D.D.C. 2013)............................31

*Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408 (1984) ..............................25

*\*Helmer v. Doletskaya*, 393 F.3d 201 (D.C. Cir. 2004) ............................22, 23, 24

*Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315 (2d Cir. 2001)................................12

*Hidalgo v. Amateur Athletic Union*, 468 F. Supp. 3d 646 (S.D.N.Y. 2020) ..............................27

*Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84 (D.D.C. 2012)................................27

*Hines v. Overstock.com, Inc.*, 380 F. App'x 22 (2d Cir. 2010) .....................................27

*Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72 (D.D.C. 2004)..........................36, 37

*Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142 (D.D.C. 1979) ............36, 37

*\*Janvey v. Proskauer Rose, LLP*, 59 F. Supp. 3d 1 (D.D.C. 2014)...................11, 12, 15

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740 (2d Cir. 2020)...........................................................................................24

*Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90 (D.D.C. 2012) ........................17, 18

*Kissi v. Panzer*, 664 F. Supp. 2d 120 (D.D.C. 2009)...................................................24

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019) .....................................................28

*Laroach v. BridgePoint Healthcare, LLC*, 2018 WL 6434768 (D.D.C. Dec. 7, 2018) ................................................................................................................11

*Livnat v. Palestinian Auth.*, 851 F.3d 45 (D.C. Cir. 2017) ..........................................15

*Martin-Trigona v. Meister*, 668 F. Supp. 1 (D.D.C. 1987).........................................37

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017)..............................................27

*Mizrachi v. Ordower*, 2019 WL 918478 (N.D. Ill. Feb. 25, 2019)...............................19

*Mobile Now, Inc. v. Sprint Corp.*, 393 F. Supp. 3d 56 (D.D.C. 2019) .........................29

*N'Jai v. U.S. Dep't of Ed.*, 2021 WL 1209281 (D.D.C. Mar. 31, 2021) .......................26

*Naegele v. Albers*, 355 F. Supp. 2d 129 (D.D.C. 2005)...............................................15

*Nelson v. Insignia/Esg, Inc.*, 215 F. Supp. 2d 143 (D.D.C. 2002)................................29

*New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90 (D.D.C. 2010) ................................................................................................................35

*Nu Image, Inc. v. Does 1-2, 322*, 799 F. Supp. 2d 34 (D.D.C. 2011)...........................23

*Nytes v. Trustify, Inc.*, 297 F. Supp. 3d 191 (D.D.C. 2018) (Walton, J.).....................12

*Okolie v. Future Servs. Gen. Trading & Contracting Co.*, 102 F. Supp. 3d 172 (D.D.C. 2015) ...............................................................................15, 18, 25, 17

*Page v. Democratic Nat'l Comm.*, 2020 WL 8125551 (N.D. Ill. Aug. 17, 2020).................18, 19

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)..................................................36

*Prakash v. Am. Univ.*, 727 F.2d 1174 (D.C. Cir. 1984)............................................................10, 12

*\*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000).......................................34, 36, 37

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) ...............................................................28

*Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140 (D.D.C. 2014) ................................................31

*Sakyi v. Estee Lauder Cos.*, 308 F. Supp. 3d 366 (D.D.C. 2018) .................................................27

*Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521 (D.C. Cir. 2001) ................ *passim*

*Simpson v. Champion Petfoods USA, Inc.*, 2019 WL 5653199 (E.D. Ky. Oct. 31, 2019) ...................................................................................................................................18

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018)...............................................................20

*Statek Corp. v. Coudert Bros. LLP*, 2018 WL 834227 (D. Conn. Feb. 12, 2018).........................23

*Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179 (3d Cir. 2008)....................................................15

*Tauber v. Quan*, 938 A.2d 724 (D.C. 2007) ..................................................................................30

*U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686 (D.C. Cir. 2009)..........................36

*Unique Woodworking, Inc. v. N.Y. City Dist. Council of Carpenters' Pension Fund*, 2007 WL 4267632 (S.D.N.Y. Nov. 30, 2007) ................................................29

*United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30 (D.D.C. 2007) .......................31

*United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-0038*, 617 F. Supp. 2d 103 (S.D.N.Y. 2017) ...................................................33

*Upshaw v. Progressive Ins. Co.*, 292 F. Supp. 3d 205 (D.D.C. 2017) ..........................................18

*Urquhart-Bradley v. Mobley*, 964 F.3d 36 (D.C. Cir. 2020) .........................................................20

*Walden v. Fiore*, 571 U.S. 277 (2014).............................................................20, 21, 24, 25

*Waldman v. PLO*, 835 F.3d 317 (2d Cir. 2016)............................................................................21

*Williams v. Romarm, SA*, 756 F.3d 777 (D.C. Cir. 2014).......................................................16, 25

*Winmar Constr., Inc. v. ESF, Inc.*, 2023 WL 1778201 (D.D.C. Feb. 6, 2023).............................23

## OTHER AUTHORITIES

Arthur R. Miller, 13F Federal Practice & Procedure § 3630.01 (3d ed. Apr. 2023 update)...................................................................................................................................12

9 U.S.C. § 2 ..............................................................................................28, 29, 30

9 U.S.C. § 4 ..............................................................................................29

28 U.S.C. § 1404 ......................................................................................34

D.C. Code § 13-334 ..................................................................................17, 18

D.C. Code § 13-422 ..................................................................................16, 17

D.C. Code § 13-423 ..................................................................................20

Federal Arbitration Act ............................................................................28, 29, 30

Fed. R. Civ. P. 12 .....................................................................................2, 27

Fed. R. Civ. P. 56 .....................................................................................27

Ronald Mallen, 4 *Legal Malpractice* § 37:30 (2023 ed.) ........................24

## **INTRODUCTION**

Plaintiff, Mykalai Kontilai, a fugitive on the FBI's Most Wanted List who fled to Russia to evade criminal prosecution for fabricating documents produced in an SEC investigation and certain financial crimes, together with his company, Collector's Coffee Inc. ("Collector's Coffee"), have sued Debevoise & Plimpton LLP and three of its lawyers—partner Andrew J. Ceresney and former associates Dustin Brockner and Miheer Mhatre (the "Individual Defendants" and, collectively with the law firm, "Debevoise")—to attempt to shift culpability for plaintiffs' own conduct. Facing a parallel SEC enforcement action in the Southern District of New York (filed over four years ago) and two federal indictments in Colorado and Nevada, Kontilai and Collector's Coffee seek to blame and extort money from their former counsel just as all of their assets have been frozen. They allege 13 duplicative claims that all sound in legal malpractice. All are baseless.

The complaint should be dismissed for multiple threshold reasons, including because: (1) there is no diversity jurisdiction; (2) the Court does not have personal jurisdiction over defendants; (3) plaintiffs' claims are subject to mandatory arbitration; and (4) the fugitive disentitlement doctrine warrants dismissal. Alternatively, the case should be transferred to the Southern District of New York, where the SEC's enforcement action against plaintiffs is pending.

## BACKGROUND[1]

### A.    Civil Litigation, the SEC Investigation, and the Retention of Debevoise

In November 2007, Kontilai founded Collector's Coffee, originally intended as a "one stop shop" coffee house where collectors could interact and buy collectibles from dealers worldwide.  Compl. ¶¶ 15, 22.  Kontilai's strategy was "to scale th[e] enterprise through its acquisition of assets," and Collector's Coffee raised money from investors using a Private Placement Memorandum and purported borrowings from Kontilai.  *Id.* ¶¶ 15, 22, 24, 30.

However, allegations of securities fraud began to surface.  In March 2017, two of Collector's Coffee's shareholders alleged that Collector's Coffee had violated the securities laws and demanded their investments back.  *Id.* ¶¶ 36, 38.  Two months later, in May 2017, these investors sued for securities fraud.  *Id.* ¶ 41; *see Blue Sunsets LLC v. Kontilai*, 17-cv-01418 (D. Nev. 2017).  Kontilai and Collector's Coffee settled the case, Compl. ¶ 45, but their legal troubles were just beginning.

Shortly after this settlement, the SEC launched an investigation into securities law violations by Kontilai and Collector's Coffee, and it began to serve subpoenas.  *Id.* ¶ 46.  In late 2017, plaintiffs decided to retain Andrew J. Ceresney, a partner in Debevoise's New York office and former Director of the SEC's Division of Enforcement, to represent them in the SEC investigation.  *Id.* ¶¶ 57, 62, 66 & Exhibit ("Ex.") 1.  Debevoise's engagement letter, dated January 10, 2018, was addressed to Kontilai as Collector's Coffee's President and CEO.  *Id.*, Ex. 1.  It stated that Collector's Coffee had engaged Debevoise "to represent the Company in connection with the [SEC] Investigation," and that "[i]f additional services [we]re requested and

---

[1] Debevoise disputes plaintiffs' allegations; it accepts all well-pleaded allegations as true solely for purposes of adjudicating this motion under Rule 12, where applicable.  Notably, many allegations are contrary to facts set forth in the SEC's Complaint filed against Kontilai and Collector's Coffee, as well as the criminal indictments of Kontilai.

agreed to, . . . th[e] letter [would] apply to such services, unless superseded by another written engagement letter." *Id*.  Kontilai alleges that he understood that Debevoise also represented him under the engagement letter, as he too was a target of the SEC's investigation.  *Id*. ¶¶ 3, 63.  Debevoise's engagement letter included a mandatory arbitration provision requiring that "any dispute or claim arising out of or in any way relating to [Debevoise's] representation of you (including, without limitation, any claim of malpractice, breach of contract, or relating to fees or charges for the representation) shall be finally settled by arbitration."  Compl., Ex. 1, pp.3-4.  The engagement letter was issued under Debevoise's letterhead and identified its address as New York, NY.  *Id.* at 1.  Kontilai signed the engagement letter on behalf of Collector's Coffee.  *Id*. at 5.  Beginning in January 2018, Mr. Ceresney served as lead defense counsel on the SEC investigation, assisted by two associates, Dustin Brockner and Miheer Mhatre (who also worked in Debevoise's New York office).  Compl. ¶¶ 6-10, 67.

### B.   Debevoise's Legal Services and Discovery of Fraudulent Documents

During the investigation, Kontilai and Collector's Coffee, through Debevoise, produced thousands of documents to the SEC in response to subpoenas.  *Id*. ¶¶ 73-74.  In Spring 2018, the SEC asked to examine Kontilai under oath, and he testified before the SEC in Colorado on May 16-17, 2018.  *Id*. ¶ 82.  In anticipation of that deposition, Debevoise asked Kontilai to provide additional documents responsive to the SEC's subpoenas, including the 2007 employment contract he claimed he had with Collector's Coffee.  *Id*. ¶ 84.  Kontilai informed Debevoise that Collector's Coffee's (purported) former Chairman, Gail Holt, had drafted these documents while on Collector's Coffee's Board in 2007-08.  *Id*. ¶ 85.  Kontilai allegedly called Holt and asked her to send to him any documents she could find from 2007-08.  *Id*. ¶ 89.  Holt purportedly confirmed that she had such documents and delivered them to Kontilai.  *Id*. ¶ 91.  Kontilai transmitted these documents to Debevoise and asked Debevoise to produce them to the SEC

immediately, which Debevoise did on Monday, May 14, 2018, two days before Kontilai testified. *Id.* ¶¶ 91, 93.  Debevoise attorneys prepared Kontilai for his testimony before the SEC in Denver, and Mr. Ceresney defended Kontilai during that testimony.  *Id.* ¶¶ 82-83, 98.

On or about August 1, 2018, Mr. Ceresney informed Kontilai that a document Kontilai had sent to Debevoise to produce to the SEC was a forgery.  *Id.* ¶ 108.  In particular, a purported 2007 employment agreement between Collector's Coffee and Kontilai bearing Kontilai's signature contained on its last page a printed date-stamp indicating that it had been generated in "2018," not 2007.  *Id.* ¶ 109.  Mr. Ceresney informed Kontilai that this fact could present a significant problem, as producing a forged document to a government agency in the course of an investigation could constitute obstruction of justice.  *Id.*  Kontilai denied knowledge of the forgery.  *Id.* ¶ 112.  Mr. Ceresney immediately called Holt, who told him that she had been unable to locate the original 2007 employment agreement and, instead, created this document. *Id.* ¶¶ 115-18.  Holt initially denied that anyone had directed her to create the document.  *Id.* ¶ 118.  Because of the nature of Holt's conduct, Debevoise informed her that she needed her own counsel, and William Leone of Norton Rose Fulbright was retained to represent her.  *Id.* ¶¶ 122-23.

On October 2, 2018, Messrs. Ceresney and Leone spoke with the SEC and disclosed that the employment agreement produced on May 14, 2018 was not an original and had been recreated.  *Id.* ¶ 129.  Plaintiffs allege that the SEC thereafter terminated settlement negotiations and expanded its investigation into the plaintiffs.  *Id.* ¶¶ 134-35.  Later that month, after learning of additional fabricated documents that Kontilai had sent to Debevoise to produce to the SEC, Debevoise informed plaintiffs that it would no longer represent them.  *Id.* ¶ 136.  At the time, Collector's Coffee and Kontilai owed Debevoise more than $1 million in unpaid legal fees.

C.      **The SEC Enforcement Action and Criminal Indictments**

In May 2019, the SEC sued Kontilai and Collector's Coffee in the Southern District of New York.  Compl. ¶¶ 138, 147, 159; *see SEC v. Collector's Coffee, Inc.*, No. 19-cv-04355 (S.D.N.Y.) Dkt. 1 (May 14, 2019) ("*SEC v. CCI*").[2]  The SEC alleged that Kontilai and Collector's Coffee had engaged in securities fraud, including by misappropriating over $6 million in investor funds, and that Kontilai and Collector's Coffee had made material misrepresentations and omissions to investors to procure money for Kontilai's personal use.  The SEC also alleged that Kontilai had created and presented to the SEC fabricated documents concerning his employment with Collector's Coffee and a purported $5M loan and bank statement.  *SEC v. CCI*, Dkt. 1, Compl. ¶¶ 31, 94-102; *see also id*., Dkt. 134, Am. Compl. ¶¶ 101-09, 143-45 (SEC alleging that "Kontilai fabricated multiple documents" to produce to SEC, including "employment agreement, promissory note, and bank statement"); *id*., Dkt. 142, SEC Mem. in Supp. Prelim. Inj., at 13-14 (SEC asserting that Kontilai fabricated documents, and his assertion that their production was counsel's fault is "not true").  The SEC moved for a TRO to freeze Kontilai and Collector's Coffee's assets based on Kontilai's stated intent to flee the United States and his "egregious conduct," including his use of "fabricated documents" without counsel's knowledge.  *Id*., Dkt. 9, Mem. in Supp. of TRO, at 4.  The Court granted the TRO, froze Kontilai and Collector's Coffee's assets, and ordered that "[n]o person or entity, including Defendants Collector's Coffee or Mykalai Kontilai . . . shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits" that "impact the property

---

[2] The "court may take judicial notice of another court's proceedings."  *Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 371 (D.D.C.), *aff'd*, 2015 WL 9309944 (D.C. Cir. 2015); *see also Akers v. Watts*, 589 F. Supp. 2d 12, 15 (D.D.C. 2008) ("taking judicial notice of record in related civil action" (citing *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981))).

and assets" of either Kontilai or Collector's Coffee.  *Id.*, Dkt. 12, TRO at 5.  The TRO has continued in effect.  *Id.*, Dkt. 875, Order, at 4-5; *see also id.*, Dkt. 988, Order at *13-19.

The SEC also sent a criminal referral concerning Kontilai to the U.S. Department of Justice.  Compl. ¶¶ 137, 147.  On March 10, 2020, a federal grand jury in Colorado returned a six-count indictment against Kontilai, alleging, among other things, that he had (1) "conspire[d] . . . to corruptly obstruct, influence, and impede an official proceeding," (2) "obstruct[ed] an official proceeding" by "falsifying . . . an employment agreement between himself and Collector's Coffee[] that he knew would be provided to the [SEC]" and by "making false statements to his counsel regarding an employment agreement . . . for the purposes of communicating the false statements to" the SEC, and (3) "alter[ed] and attempt[ed] to alter a document . . . with the intent to impair its integrity and availability for use in an official proceeding."  Ex. A, *United States v. Kontilai*, No. 20-cr-00083, Dkt. 1, Indictment, ¶¶ 24, 28, 30, 32, 34 (Mar. 10, 2020 D. Colo.).  Three months later, on June 3, 2020, a federal grand jury in Nevada indicted Kontilai, alleging in 18 counts that he had, among other things, "caused to be created and produced to the SEC a fake employment agreement" and "fake convertible note and altered bank statement."  Ex. B, *United States v. Kontilai*, No. 20-cr-00109, Dkt. 1, Indictment, ¶¶ 22, 25, 30, 32, 37, 41 (June 3, 2020 D. Nev.) ("Nevada Indictment").

Meanwhile, in August 2019, following the SEC's filing of its lawsuit, Kontilai fled the United States and absconded to Russia to seek asylum.  Compl. ¶¶ 138, 162.  Kontilai for years remained a fugitive on the FBI's Most Wanted List.  *Mykalai Kontilai*, Wanted by the FBI, https://www.fbi.gov/wanted/wcc/mykalai-kontilai/@@download.pdf. (last visited Aug. 7, 2023).

**D.    Procedural History of This Case**

Plaintiffs initially attempted to file this lawsuit under seal on the grounds that "disclosure [of the lawsuit] may result in excluding the possibility of an early settlement."  *Collector's*

*Coffee Inc., et al. v. Debevoise & Plimpton, et al.,* 1:20-mc-00099-UNA, Dkt. 1 at 3.  The Court rejected that sealing request, stating that "plaintiffs' belief that sealing this suit may provide some leverage in settlement" was an "insufficient reason for sealing a civil lawsuit."  *Id.* at 4. Had plaintiffs succeeded in filing this case under seal, it is possible that neither the SEC nor the court in the SEC enforcement action would have been aware that plaintiffs were attempting to liquidate a potential asset subject to the TRO.[3]

On October 17, 2020, plaintiffs filed this lawsuit, alleging 13 duplicative causes of action for negligence (Counts I-IV), breach of contract (Count V), breach of fiduciary duty (Count VI), fraudulent concealment (Count VII), fraud (Count VIII), misrepresentation (Count IX), and civil conspiracy (Count XIII), and requesting an inspection (Count X), accounting (Count XI), and injunctive relief (Count XIV).  Plaintiffs assert a series of legally (and factually) baseless allegations, faulting Debevoise for: (1) representing plaintiffs in an SEC investigation when its lead counsel, Mr. Ceresney, previously had worked at the SEC as the Director of the Division of Enforcement, Compl. ¶¶ 190-97, 219-22; (2) failing to notice that a document Kontilai had sent to Debevoise and purportedly signed was forged until after the document was produced to the SEC, *id.* ¶¶ 93, 199-208; (3) delaying the disclosure to the SEC for several weeks that a document Kontilai had produced to the SEC was fabricated while a key witness involved in its fabrication could obtain counsel to explain her conduct to the SEC, *id.* ¶¶ 209-18; (4) allegedly representing Collector's Coffee, its officers, and Board members in the SEC's investigation without conflict waivers, *id.* ¶¶ 169-74; and (5) allegedly telling Kontilai (before he sent forged

---

[3] Plaintiffs' attempt to file their complaint under seal and without disclosing it to the SEC or the court in order to extract a settlement is consistent with other schemes described by the SEC, including Kontilai's so-called "Insurance Fraud Scheme" in which Kontilai attempted to use counsel to divert to himself insurance proceeds from counsel and Collector's Coffee.  *See SEC v. CCI*, Dkt. 453, at 9-11.

documents to Debevoise to produce to the SEC) that the SEC's investigation would resolve favorably within a specified period, *id.* ¶¶ 186-87.

After plaintiffs filed the public version of their Complaint, the SEC moved in its enforcement action to hold Collector's Coffee and Kontilai in contempt, including because they violated the TRO by filing this case on a contingency fee basis and encumbering a potential asset subject to the asset freeze. *SEC v. CCI*, Dkt. 722 at 40-41. The court in the Southern District of New York determined that instituting and pursuing this lawsuit violated the TRO. *See SEC v. CCI*, Dkt. 988, Order at *18. The Magistrate Judge issued an opinion recommending that this case could proceed only if two conditions were met: (1) Collector's Coffee and Kontilai find an attorney "willing to absorb any costs without placing a monetary limitation"; and (2) "satisfactory proof is provided to the Court of the written retainer agreement, which must reflect the lawyer's agreement to bear responsibility for any costs without limitation." *Id.* at 25-26. On May 8, 2022, the District Court adopted these conditions. *Id.*, Dkt. 1013. To date, to the best of defendants' knowledge, plaintiffs have met neither condition.[4]

The parties in this case nine times jointly moved to stay proceedings to allow further development of the SEC enforcement action. Debevoise's responsive pleading was due on March 15, 2021 and, on March 8, 2021, the Court granted Debevoise's unopposed motion to extend that deadline by 60 days to allow for further development of the SEC enforcement action. Dkts. 6, 7. The Court thereafter granted nine joint motions to extend that deadline for the same

---

[4] The SEC also sought an order prohibiting Kontilai and Collector's Coffee from moving forward with this case until they could demonstrate that their counsel in this case was "competent." *Id.* at *23. The Magistrate Judge's Report and Recommendation expressed "concerns about the attorney retained in the malpractice action, given that [Collector's Coffee] and Kontilai are being represented by George Lambert, who is still attorney of record in this matter and is part of a group of attorneys whose conduct has been characterized by this Court as dilatory and has been the subject of repeated criticism." *Id.* at *23-24 (cleaned up); *see id.* at *24 (citing examples of dilatory and frivolous litigation tactics by defense counsel in the SEC enforcement action). The court, however, declined to become the "arbiter of which particular attorney should pursue an action frozen by the TRO." *Id.* at *24.

reason.  Dkts. 9-15, 19, 20.  The SEC enforcement action has substantially advanced during that time, and it is set for a 10-day trial beginning October 3, 2023.  *SEC v. CCI*, Dkt. 1216.

On April 24, 2023, ten days after the parties' last joint filing in this case, Kontilai's counsel informed the court in the SEC enforcement action that Kontilai had been arrested in Germany pursuant to an Interpol Red Notice issued in connection with his indictments in Colorado and Nevada.  *SEC v. CCI*, Dkts. 1209, 1210.  Kontilai's counsel subsequently called Debevoise's counsel and offered to dismiss this lawsuit if Mr. Ceresney would help Kontilai in his criminal cases.  *See* Dkt. 21-9, Defs. Mot. to Stay, Decl. of David S. Blatt, ¶ 2 (filed July 11, 2023).  Kontilai's counsel stated that this help could be in the form of a carefully crafted, mutually acceptable affidavit from Mr. Ceresney that cast blame on Holt, a government witness in the criminal cases, which Kontilai could then present to prosecutors.  Dkt. 21-9 ¶ 2. Debevoise's counsel responded that Mr. Ceresney would not provide an affidavit, Collector's Coffee and Kontilai had deposed Mr. Ceresney in *SEC v. CCI*, and Mr. Ceresney's testimony was set forth in that deposition.  *Id.* ¶ 3.  Kontilai's counsel responded that plaintiffs would agree to no more extensions in this case and would use this case to seek to depose Mr. Ceresney as soon as they could.  *Id.*

On July 11, 2023, Debevoise moved to stay this case pending the SEC enforcement action and two criminal cases.  Dkt. 21.  That motion is fully briefed and pending.  The next day, Kontilai filed a letter in the SEC enforcement action informing the court that he is in German custody and does not intend to testify at the SEC trial.  *SEC v. CCI*, Dkt. 1251.  Kontilai represented that depending on the outcome of his pending extradition proceeding, "it could be that [he] is returned to the United States, or he may not."  *Id.* at *2.  Kontilai further asserted that,

if he is extradited to the United States before trial in the SEC enforcement action, he "will invoke his Fifth Amendment privilege" and refuse to testify in that trial. *Id.* at *3.

## ARGUMENT

Plaintiffs' claims are facially implausible, and plaintiffs fail plausibly to allege liability, causation, or damages for any of them. However, the Court need not—and cannot—even reach these claims because multiple threshold bases require dismissal. *First*, the Court does not have subject-matter jurisdiction over the claims because Debevoise's partners include United States citizens who are domiciled abroad, thereby destroying complete diversity. *Second*, the Court does not have personal jurisdiction over Debevoise or the Individual Defendants because none of them is subject to general jurisdiction in the District of Columbia and because this lawsuit has no connection to the forum. *Third*, the claims should be dismissed because they are subject to mandatory arbitration, as evidenced by the engagement letter that plaintiffs attached to their Complaint. *Fourth*, the claims are barred by the Fugitive Disentitlement Doctrine, which prevents fugitives like Kontilai from improperly manipulating judicial process for their own benefit while fleeing from justice. *Fifth*, and alternatively, the Court should exercise its discretion and transfer this case to the Southern District of New York where the SEC enforcement action is pending and where a TRO currently prevents plaintiffs from pursuing this case. In all events, if plaintiffs wish to pursue their imagined malpractice claims, they cannot do so in this forum.

## I.    There Is No Subject-Matter Jurisdiction.

Plaintiffs bear the burden of establishing subject-matter jurisdiction. *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). Before exercising jurisdiction, the Court must "satisfy itself of its authority to hear the case." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984). It may not "merely . . . assum[e] the truth of the facts alleged by the plaintiff," but

instead "must go beyond the pleadings and resolve any disputed issues of fact," *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (citation omitted), including by "consider[ing] documents outside the pleadings to assure itself that it has jurisdiction," *Flores ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22, 28 (D.D.C. 2006) (citations omitted).

Here, plaintiffs predicate federal jurisdiction on the diversity of the parties. Compl. ¶ 12. To establish diversity jurisdiction, "there must be complete diversity of citizenship between the parties, which is to say that plaintiff may not be a citizen of the same state as any defendant." *Bramson v. Gill*, 2022 WL 2111543, at *2 (D.D.C. Apr. 14, 2022) (cleaned up). Critically, "the plaintiff must meet the requirements of . . . diversity . . . for each defendant or face dismissal." *Id.* (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989)). Here, however, as set forth below, multiple Debevoise partners are United States citizens who are domiciled abroad, and they are considered "stateless" for purposes of diversity jurisdiction. "It is well settled law that a 'stateless' partner can destroy complete diversity." *Janvey v. Proskauer Rose, LLP*, 59 F. Supp. 3d 1, 8 (D.D.C. 2014). Because Debevoise has such stateless partners, there is no diversity, and this Court lacks subject-matter jurisdiction over plaintiffs' claims.

Two legal principles control this analysis. *First*, limited liability partnerships such as Debevoise are "deemed citizens of wherever their members are domiciled." *Laroach v. BridgePoint Healthcare, LLC*, 2018 WL 6434768, at *2 (D.D.C. Dec. 7, 2018) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 192 (1990)). *Second*, a United States citizen domiciled abroad is deemed to be "stateless" and "cannot sue or be sued in federal court on the basis of diversity." *Core VCT Plc v. Hensley*, 59 F. Supp. 3d 123, 125 (D.D.C. 2014) (citing *Newman-Green*, 490 U.S. at 828).

Numerous courts have held that, if any member of a partnership is a United States citizen domiciled abroad, that partner is considered "stateless" and the partnership cannot be sued in federal court based on federal diversity jurisdiction.  *See, e.g.*, *Janvey*, 59 F. Supp. 3d at 5-6 (citation omitted) (dismissing claims where "two of the defendants [were] law firms with partners who [were] American citizens domiciled abroad"); *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("if Skadden has among its partners any U.S. citizens who are domiciled abroad, then Skadden and Herrick . . . are non-diverse").  The leading civil procedure treatise likewise acknowledges that "[i]f a member of a partnership is a United States citizen permanently living abroad, there can be no diversity of jurisdiction."  Arthur R. Miller, 13F Federal Practice & Procedure § 3630.01 (3d ed. Apr. 2023 update).  Thus, if any Debevoise partner is a United States citizen who is domiciled abroad, this Court lacks federal diversity jurisdiction.

"When diversity of citizenship is the issue, the relevant evidence is that relating to the domiciles of the parties."  *Parkash*, 727 F.2d at 1180.  A person's domicile is "determined by two factors: physical presence in a state, and intent to remain there for an unspecified or indefinite period of time."  *Id*.  To make this determination, courts may look to a variety of considerations, including a person's "[1] current residence, [2] a sworn declaration of domicile, [3] ownership of real and personal property, [4] voting registration, [5] bank accounts, [6] automobile registration, [7] driver's license, [8] club membership, [9] location of spouse and family, [10] place of employment or business, and [11] payment of taxes."  *Nytes v. Trustify, Inc.*, 297 F. Supp. 3d 191, 198 (D.D.C. 2018) (Walton, J.) (quoting *Core*, 59 F. Supp. 3d at 126).

Both at the time the lawsuit was filed and now, multiple Debevoise partners are United States citizens who are domiciled abroad, thus defeating diversity.

As set forth in the Declaration of Debevoise partner Katherine Ashton Young, she long has been a citizen of both the United Kingdom and the United States and has lived in London with her husband for the past 30 years since 1993 where she has worked in Debevoise's London office. Ex. C ¶¶ 1-2. She owns two homes and one car in Britain (and none in the United States), has raised her four children in London, votes in British elections, has a driver's license and bank accounts in Britain, regularly attends services of the Church of England, baptized all four of her children in the Church of England, and is a member of a host of British organizations and charities. *Id.* ¶¶ 3-8. She has no current intention of returning to live in the United States, and the British government deems her to be domiciled in Britain. *Id.* ¶¶ 6, 9.

Debevoise partner Alan Kartashkin similarly is a United States citizen who is domiciled abroad, and he was so domiciled both at the time the Complaint was filed and now. *See* Ex. D ¶¶ 2-3. He was born in the United States to citizens of the Soviet Union (his father worked at the United Nations), is a citizen of both Russia and the United States, was raised in both the Soviet Union and the United States, and lived continuously in Russia with his wife for 20 years from 2001 to 2022 where he worked in Debevoise's Moscow office. *Id.* ¶¶ 2-3. He lived in Russia until the start of the Russia-Ukraine war, and he now lives in the United Kingdom. *Id.* He rents real estate in the United Kingdom but does not own or rent any property in the United States. *Id.* ¶ 4. He is licensed to practice law in Russia, and he is a registered foreign lawyer with the Solicitors Regulation Authority in the United Kingdom. *Id.* ¶ 1. He raised his two children in Russia (both of whom live with him now in the United Kingdom); he holds a Russian driver's license; he plans to obtain a driver's license in the United Kingdom (but has never held one in the United States); and he maintains bank accounts in the United Kingdom, Israel, Jersey, as well as the United States. *Id.* ¶¶ 3, 5-6. He paid taxes in Russia and the United Kingdom, and he is

considered a non-resident taxpayer by the United States.  *Id.* ¶ 7.  He has not voted in a United States election since 2000.  *Id*. ¶ 7.  He has no current intention of returning to the United States, nor did he have any such intention when the Complaint was filed.  *Id.* ¶ 9.

Debevoise partner Geoffrey P. Burgess similarly is a United States citizen who is domiciled abroad, and he was so domiciled both at the time the Complaint was filed and now. *See* Ex. E ¶ 2.  He is a citizen of both the United Kingdom and the United States, and has lived in London with his wife for the past 24 years since 1999 where he has worked in Debevoise's London office.  *Id.* ¶¶ 1-2.  He owns a house and one car in Britain (and none in the United States), has raised his three children in London, votes in British elections, has a driver's license and bank accounts in Britain, regularly attends church services at the Church of England, is a member of a host of British organizations and charities, and the British government deems him to be domiciled in Britain.  *Id.* ¶¶ 3-8.  He has no current intention of returning to live in the United States, nor did he have any such intention when the Complaint was filed.  *Id.* ¶ 9.

Debevoise partner James Scoville similarly is a United States citizen who is domiciled abroad, and he was so domiciled both when the Complaint was filed and now.  *See* Ex. F.  He has lived continuously in London since 2002 with his wife, has worked in Debevoise's London office for the past 21 years, and owns a home and two cars in London (and none in the United States).  *Id.* ¶¶ 1-2.  He has raised three children in London, has a British driver's license and bank accounts, votes in British elections, and the British government deems him to be domiciled in Britain.  *Id*. ¶¶ 2-7.  He has no current plans of returning to live in the United States, nor did he have any such plans when the Complaint was filed.  *Id.* ¶ 8.

As demonstrated, multiple Debevoise partners are United States citizens who are domiciled abroad, and they were so domiciled when the Complaint was filed and now.  *See, e.g.*,

*Naegele v. Albers*, 355 F. Supp. 2d 129, 135 (D.D.C. 2005) (driver's license, club membership, and declaration of voter registration and bank accounts suffice to establish domicile).  These Debevoise partners are deemed "stateless" for purposes of federal diversity jurisdiction, and Debevoise cannot be sued in federal court based on diversity jurisdiction.  *See, e.g.*, *Janvey*, 59 F. Supp. 3d at 8.  "Because [the law firm] has a stateless partner, and thus, all partners of [the partnership] are not diverse from all parties on the opposing side, the district court . . . lack[s] diversity jurisdiction."  *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 185 (3d Cir. 2008).

## II.    The Court Lacks Personal Jurisdiction over Defendants.

Dismissal is required for a second, independent reason: the Court lacks personal jurisdiction to hear claims brought by non-resident plaintiffs against non-resident defendants arising out of conduct that occurred outside of the forum.

"The plaintiffs have the burden of establishing the court's personal jurisdiction over the defendants."  *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021) (citation omitted).  To meet its burden, "plaintiff cannot rest on conclusory statements but 'must allege specific acts connecting the defendant with the forum.'"  *Barcroft v. Gibbs*, 195 F. Supp. 3d 132, 134 (D.D.C. 2016) (quoting *Second Amend. Found. v. U.S. Conf. of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)).  The Court "need not treat all of a plaintiff's allegations as true; rather, it 'may receive and weigh affidavits and other relevant matter to assist it in determining the jurisdictional facts.'"  *Okolie v. Future Servs. Gen. Trading & Contracting Co.*, 102 F. Supp. 3d 172, 175 (D.D.C. 2015) (quoting *Buesgens v. Brown*, 567 F. Supp. 2d 26, 31 (D.D.C. 2008) (Walton, J.)).

Due process requires that a defendant "have certain minimum contacts with the forum such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 48 (D.C. Cir. 2017) (cleaned up) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "The due process limits on

judicial exercise of personal jurisdiction over non-resident defendants take two forms: 'general

or all-purpose jurisdiction, and specific or conduct-linked jurisdiction.'" *Est. of Klieman ex rel.*

*Kesner v. Palestinian Auth.*, 923 F.3d 1115, 1119 (D.C. Cir. 2019) (quoting *Daimler AG v.*

*Bauman*, 571 U.S. 117, 122 (2014)), *vacated*, 140 S. Ct. 2713, *and reinstated in part*, 820 F.

App'x 11 (D.C. Cir. 2020); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

919 (2011).[5]  When assessing personal jurisdiction, the Court "must first decide whether

statutory jurisdiction exists under the District's long-arm statute and, if it does, then [it] must

determine whether an exercise of jurisdiction would comport with constitutional limitations."

*Forras v. Rauf*, 812 F.3d 1102, 1105-06 (D.C. Cir. 2016).

Here, plaintiffs fail to carry their burden.  *First*, the Court cannot exercise general

jurisdiction because no statute provides for it, and no defendant is "at home" in the District of

Columbia.  *Second*, there is no specific jurisdiction because the Complaint lacks any allegations,

much less specific allegations, that Debevoise's lawsuit-related conduct has a substantial

connection with the District of Columbia.

### A.      Defendants Are Not Subject to General Jurisdiction.

"General jurisdiction entails a relatively demanding standard."  *Klieman*, 923 F.3d at

1119.  Plaintiffs' sparse allegations fail to satisfy either of its two statutory bases, and due

process also prohibits the exercise of general jurisdiction.

*First*, there is no factual basis for exercising general jurisdiction under either of the

District of Columbia's general jurisdiction statutes.  D.C. Code § 13-422 provides that a District

of Columbia court "may exercise personal jurisdiction over a person domiciled in, organized

---

[5] "Because subject matter jurisdiction in this case is based on diversity of citizenship, the forum 'state' is that in which the federal court sits—here, the District of Columbia." *Williams v. Romarm, SA*, 756 F.3d 777, 783 (D.C. Cir. 2014).

under the laws of, or maintaining his or its principal place of business in, the District of

Columbia." Debevoise is a limited liability partnership organized under the laws of New York,

and its principal place of business is in New York. Compl. ¶ 12 (Debevoise registered in the

District as "foreign LLP"); Ex. G ¶¶ 2-3. The Individual Defendants—Messrs. Ceresney,

Brockner, and Mhatre—at all relevant times are or have been residents of New York, New

Jersey, or Florida. *Id.* ¶¶ 6-8.[6] Thus, section 13-422 does not apply. *See, e.g.*, *Erwin-Simpson*,

985 F.3d at 889 (no jurisdiction over foreign corporation with principal place of business outside

of D.C.); *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 97 (D.D.C. 2012) (same for foreign

corporation with office in D.C. because "defendant is headquartered, incorporated, and resides in

Florida").

Jurisdiction similarly is improper under D.C. Code § 13-334, a service-of-process statute

applicable to "foreign corporation[s] doing business" in the District of Columbia that has been

construed to confer personal jurisdiction. *See Erwin-Simpson*, 985 F.3d at 889. This statute

establishes jurisdiction only if a plaintiff serves a defendant in the District of Columbia. *Id.* at

890. Because plaintiffs do not allege to have done so, there is no jurisdiction under section 13-

334. *See, e.g.*, *id.*; *Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 233 (D.C.

2006).[7] Further, the statute is inapplicable because none of the defendants is a "foreign

corporation." D.C. Code § 13-334.

Due process also precludes the exercise of general jurisdiction here. "[O]nly a limited set

of affiliations with a forum will render a defendant amenable to general jurisdiction in that

---

[6] This court may "receive and weigh affidavits and other relevant matter to assist it in determining the jurisdictional facts." *Okolie*, 102 F. Supp. 3d at 175 (quoting *Buesgens*, 567 F. Supp. 2d at 31).

[7] Defendants waived service of process and explicitly retained the right to assert jurisdictional defenses. Dkt. 5. Thus, waiver of service has no effect on personal jurisdiction under section 13-334. *See Johns*, 887 F. Supp. 2d at 98 (waiver of service does not waive jurisdictional defenses to section 13-334).

State." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (cleaned up).  Due process permits the exercise of general jurisdiction only where an entity's contacts with the State "are so continuous and systematic as to render [it] essentially at home in the forum state." *Erwin-Simpson*, 985 F.3d at 889-90 (quoting *Daimler*, 571 U.S. at 139).

For the Individuals Defendants, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 571 U.S. at 137.  Plaintiffs do not allege that any of the Individual Defendants live in the District of Columbia, let alone are domiciled here. Compl.  ¶¶ 5-10.  Rather, the Individual Defendants are or have been domiciled in New York, New Jersey, or Florida.  Ex. G ¶¶ 2-3, 6-8.  No Individual Defendant is domiciled in the District of Columbia.  *See id*.

For a business, the inquiry is whether the entity "is fairly regarded as at home" in the forum.  *Daimler*, 571 U.S. at 137.  "[A]bsent exceptional circumstances, general jurisdiction will lie only where an entity is formally incorporated or maintains its principal place of business." *Klieman*, 923 F.3d at 1120 (citation omitted); *see BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017); *Daimler*, 571 U.S. at 137.  Here, Debevoise is a New York limited liability partnership with its principal office in New York.  Ex. G ¶¶ 2-3.  It is "at home" in New York, and this Court does not have general jurisdiction over it.  *Daimler*, 571 U.S. at 137; *Upshaw v. Progressive Ins. Co.*, 292 F. Supp. 3d 205, 209-10 (D.D.C. 2017) (no general jurisdiction over company "incorporated under the laws of" and "operat[ing] its principal place of business in" Ohio); *Okolie*, 102 F. Supp. 3d at 176 (same; defendant "not incorporated in the District of Columbia and does not have its principal place of business here"); *Page v. Democratic Nat'l Comm.*, 2020 WL 8125551, at *2 (N.D. Ill. Aug. 17, 2020) (applying same test to law firm partnership); *Simpson v. Champion Petfoods USA, Inc.*, 2019 WL 5653199, at *2 (E.D. Ky. Oct. 31, 2019)

(same; limited partnership); *Mizrachi v. Ordower*, 2019 WL 918478, at *2 (N.D. Ill. Feb. 25, 2019) (same; limited liability partnership).

Nothing about Debevoise's District of Columbia office presents the sort of "exceptional" case that warrants deviating from the rule that an entity is "at home" in its state of legal organization and principal place of business. *BNSF*, 581 U.S. at 413; *Page*, 2020 WL 8125551, at *2. An entity "that operates in many places can scarcely be deemed at home in all of them," and the jurisdictional inquiry thus "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20. Debevoise maintains an office in the District of Columbia, as well as in London, Paris, Frankfurt, Luxembourg, and elsewhere. Compl. ¶ 12; Ex. G ¶ 4. But New York remains the state of legal organization and the location of Debevoise's principal office, and most of its lawyers work there. Ex. G ¶¶ 2-5. Its Washington, D.C. office, in contrast, represents a small portion of its overall operations, *id.* ¶ 5, and it does not render the firm "at home" in the District of Columbia or subject to jurisdiction here for claims unrelated to that office's activities, *BNSF*, 581 U.S. at 413; *Page*, 2020 WL 8125551, at *2. As the Supreme Court has held, "in-state business" does "not suffice to permit the assertion of general jurisdiction." *BNSF*, 581 U.S. at 414; *see also Duarte v. Nolan*, 2017 WL 7736939, at *1 (D.C. Cir. Apr. 18, 2017) (per curiam) (no general jurisdiction over California corporation with California principal place of business notwithstanding that "it conducts some business in D.C."); *Page*, 2020 WL 8125551, at *2 (no general jurisdiction over international law firm with office in forum that was not firm headquarters). In short, plaintiffs have failed to allege that any Individual Defendant is domiciled in the District of Columbia or that Debevoise has "affiliations with the state . . . so continuous and systematic as to render

[Debevoise] essentially at home" in the District of Columbia. *Erwin-Simpson*, 985 F.3d at 889-

90 (cleaned up). Therefore, there is no general jurisdiction over defendants here.

### B.     There Is No Basis for Specific Jurisdiction.

Nor is there a basis to assert specific jurisdiction over defendants. The District of

Columbia's long-arm statute provides:

> A District of Columbia court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a claim for relief arising from the
> person's—
>> (1) transacting any business in the District of Columbia; . . .
>> (3) causing tortious injury in the District of Columbia by an act or omission
>> in the District of Columbia;
>> (4) causing tortious injury in the District of Columbia by an act or omission
>> outside the District of Columbia if he regularly does or solicits business,
>> engages in any other persistent course of business, or derives substantial
>> revenue or goods used or consumed, or services rendered, in the District of
>> Columbia.

D.C. Code § 13-423(a).[8] Section 13-423(a)(1), which reaches individuals "transacting any

business" in the District of Columbia, has been interpreted to allow jurisdiction "to the full extent

allowed by the Due Process Clause." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir.

2020). The statutory and constitutional questions "merge into a single inquiry." *Id.*

A plaintiff asserting specific jurisdiction "must establish a relationship among 'the

defendant, the forum, and the litigation.'" *Klieman*, 923 F.3d at 1120 (quoting *Walden v. Fiore*,

571 U.S. 277, 291 (2014)); *see Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017,

1025 (2021); *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018). Accordingly, a

defendant's "minimum contacts" with a forum "must stem from or relate to conduct giving rise

to the suit." *Klieman*, 923 F.3d at 1120. Specific jurisdiction exists only if "the defendant's *suit-*

---

[8] Any assertion of jurisdiction under section 13-423(a)(3) or (a)(4) is implausible, as both require "tortious injury in
the District of Columbia." Plaintiffs assert no such allegation.

*related conduct . . .* create[s] a *substantial connection* with the forum." *Id.* (quoting *Walden*, 571 U.S. at 284); *see Waldman v. PLO*, 835 F.3d 317, 331 (2d Cir. 2016) ("specific jurisdiction depends on in-state activity that '*gave rise to the episode-in-suit*'" (quoting *Goodyear*, 564 U.S. at 923)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 582 U.S. at 264.

In addition, courts consider whether exercising jurisdiction would comport with notions of "fair play and substantial justice" by evaluating the '"burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interests in obtaining the most effective resolution of the controversies,' and the shared interests of the several States in furthering fundamental substantive social policies.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). However, "the 'primary concern' is 'the burden on the defendant,'" including the burden of being forced to "submit[] to the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers*, 582 U.S. at 263.

Here, the Complaint fails to allege any contacts between defendants and the District of Columbia that "stem from or relate to conduct giving rise to the suit." *Klieman*, 923 F.3d at 1120. All parties reside outside the District of Columbia: Plaintiffs Kontilai and Collector's Coffee are Nevada residents, Compl. ¶¶ 1-3; Kontilai currently is a fugitive who fled from the United States and is detained in Germany, *SEC v. CCI*, Dkt. 1251 at 1; Debevoise is a law firm headquartered in New York, *id.*; Ex. G ¶ 3; and the Individual Defendants work or worked in New York and live or lived in New York, New Jersey, or Florida, Ex. G ¶¶ 6-8.

To determine if a contractual relationship establishes a "substantial connection" with a forum, courts look to "the 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether the defendant 'purposefully established minimum contacts with the forum.'" *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting *Burger King*, 471 U.S. at 479).  Here, the engagement agreement between Collector's Coffee and Debevoise makes clear that Debevoise was not retained to perform services in the District of Columbia.  The agreement recites the firm's New York address, and it provides that any conflict arising out of the agreement is governed by New York law and subject to arbitration or mediation "under a procedure established in New York State."  Compl., Ex. 1, pp.1, 3; *cf. Burger King*, 471 U.S. at 481-82 (personal jurisdiction in Florida where contract contained Florida choice-of-law provision).  The "Scope of Engagement" was limited to the SEC investigation, which plaintiffs allege was being conducted out of the SEC's Denver, Colorado office.  Compl. ¶¶ 82, 93, 97-103 & Ex. 1, p.1.

The parties' "course of dealing" confirms this understanding.  *Helmer*, 393 F.3d at 205.  Plaintiffs do not allege that Debevoise performed any services in the District of Columbia; to the contrary, they allege Debevoise conducted its representation in New York.  Compl. ¶¶ 82, 91.  The Complaint confirms that the SEC's investigatory activity, including Kontilai's testimony before the SEC, occurred in Denver.  *Id.* ¶¶ 82, 93, 97-103.  The investigation culminated in an SEC enforcement action filed in New York, *id.* ¶ 159, and the criminal indictments of Kontilai were filed in Colorado and Nevada.  The Complaint nowhere alleges any "negotiations" in the District of Columbia concerning the representation, *Helmer*, 393 F.3d at 205, and nothing suggests that a Nevada company that retained a New York law firm conducted negotiations in Washington, D.C.

Applying these principles, courts in the District of Columbia have held that a law firm is not subject to personal jurisdiction in the District for malpractice claims arising out of a representation that occurred elsewhere, even if the client resides in the District. *See, e.g.*, *Exponential Biotherapies v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 4, 7-9 & n.5 (D.D.C. 2009) (no jurisdiction over Netherlands firm for claim arising out of representation in Netherlands, even though law firm called, emailed, and mailed client in the District of Columbia). Because the retainer agreement was "'neither made nor performed in the District, and no services were provided or to be provided here,' the contract [did] not justify the exercise of personal jurisdiction over the non-resident defendant." *Id.* at 7-8 (quoting *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 524 (D.D.C. 1995)); *see Winmar Constr., Inc. v. ESF, Inc.*, 2023 WL 1778201, at *4 (D.D.C. Feb. 6, 2023) (entering contract with out-of-state party was insufficient to establish specific jurisdiction in the District of Columbia when all work was performed in Maryland).

Moreover, specific jurisdiction is improper because no party resides in the District of Columbia and the Complaint does not allege that any injury occurred here. *See Bristol-Myers*, 582 U.S. at 265 (no jurisdiction where plaintiffs were not residents of, and did not suffer harm in, the forum); *cf. Ford Motor*, 141 S. Ct. at 1028 (jurisdiction proper where plaintiffs were residents of forum and suffered harm in forum caused by product defect that materialized in forum). Courts have recognized that economic injury occurs at the location of the "original events that caused the alleged injury." *Nu Image, Inc. v. Does 1-2, 322*, 799 F. Supp. 2d 34, 39 (D.D.C. 2011) (quoting *Helmer*, 393 F.3d at 209); *see Statek Corp. v. Coudert Bros. LLP*, 2018 WL 834227, at *16 (D. Conn. Feb. 12, 2018) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001)). Here, those alleged events occurred in New York (where the SEC

23

sued Kontilai and Collector's Coffee) or Colorado (where the SEC carried out its investigation and declined to offer a favorable settlement). *See* Compl. ¶¶ 82, 91, 93, 97-103, 153-60. To the extent the Complaint alleges some emotional or other injury occurring at plaintiffs' domicile, *see Calder v. Jones*, 465 U.S. 783, 788-89 (1984); *Helmer*, 393 F.3d at 208; *Exponential Biotherapies*, 638 F. Supp. 2d at 10-11, the injury occurred in Nevada, *see* Compl. ¶¶ 1-3. And the remainder of the "critical events associated with the dispute," *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 744 (2d Cir. 2020), occurred in New York. *See also* Ronald Mallen, 4 *Legal Malpractice* § 37:30 (2023 ed.) (situs of legal malpractice injury is "where the 'critical' events of the dispute took place"). Under no theory did the injury occur in the District of Columbia.

The Complaint's fleeting references to this District do not alter this conclusion. The allegations about Debevoise's Washington, D.C. office, Compl. ¶¶ 4-5, 12, are irrelevant where, as here, plaintiffs allege that the Debevoise attorneys involved in the underlying events were from the New York office. *See Bristol-Myers*, 582 U.S. at 264 (absent connection to forum related to controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State"); *see also Kissi v. Panzer*, 664 F. Supp. 2d 120, 125 (D.D.C. 2009) (Walton, J.) ("Although [defendants] may have transacted business or contracted to supply services in the District of Columbia, it does not appear that either has done so with respect to the events giving rise to the plaintiff's causes of action."). Similarly, it is irrelevant that the SEC is headquartered in the District of Columbia; the Complaint alleges that the SEC's Denver office conducted the investigation. Compl. ¶¶ 82, 91, 93, 97-103.[9]

---

[9] To the extent plaintiffs seek to establish jurisdiction based on unalleged investigatory work performed in Washington, D.C., that too would fail. Personal jurisdiction cannot be established by "random, fortuitous, or attenuated" contacts. *Walden*, 571 U.S. at 286. The thrust of plaintiffs' allegations is that the representation

Plaintiffs also allege that the Department of Justice in Washington, D.C. subpoenaed documents and testimony from Mr. Ceresney.  *Id.* ¶¶ 146-52.  But there is no allegation that Mr. Ceresney responded to a subpoena as part of his representation of plaintiffs.  Instead, plaintiffs allege that Mr. Ceresney was subpoenaed after the representation ended and when the DOJ was investigating Kontilai for criminal conduct.  *Id.* ¶ 149 (subpoena issued pursuant to "crime-fraud" exception).  These allegations do not support the exercise of personal jurisdiction for several reasons.

*First*, the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."  *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 417 (1984).  Mr. Ceresney did not "purposefully avail [himself] of the privilege of conducting activities within the forum."  *Williams v. Romarm, SA*, 756 F.3d 777, 784 (D.C. Cir. 2014).  Rather, he responded to a subpoena as required by law.

*Second*, these activities occurred after the representation had ended and after almost all of the operative events had occurred.  Plaintiffs' attempt to find some connection to the District of Columbia by pointing to actions that post-date the allegations underlying their specious claims underscores the weakness of their position.  Such "random, fortuitous, or attenuated" contact between the Department of Justice and Mr. Ceresney does not support the exercise of personal jurisdiction.  *Walden*, 571 U.S. at 286.

 *Third*, "a nonresident's entry into the District of Columbia for 'the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction.'"  *Okolie*, 102 F.

---

occurred in New York and Colorado, making any miscellaneous work performed in the District of Columbia by the SEC (or Debevoise) "fortuitous[] or attenuated" at best.  *Id.* (quoting *Burger King*, 471 U.S. at 475).

Supp. 3d at 177 (quoting *Alkanani v. Aegis Def. Servs.*, 976 F. Supp. 2d 13, 25 (D.D.C. 2014));

*see Agee v. Sebelius*, 668 F. Supp. 2d 1, 6 (D.D.C. 2009) ("contacts with the federal government

by a person outside the District of Columbia are excluded from consideration in determining

whether a putative defendant has sufficient contacts with [the District] to be subject to suit here"

(citing *Crane v. Carr*, 814 F.2d 758, 761 (D.C. Cir. 1987))); *N'Jai v. U.S. Dep't of Ed.*, 2021 WL

1209281, at *6 (D.D.C. Mar. 31, 2021).  Plaintiffs nowhere allege a substantial connection

between lawsuit-related conduct and the District of Columbia.

*Fourth*, exercising jurisdiction also would offend notions of "fair play and substantial

justice."  *Burger King*, 471 U.S. at 476.  Because plaintiffs do not reside in and have no

relationship with the District of Columbia, this forum has a minimal interest in adjudicating this

dispute.  In contrast, New York has a significant interest in adjudicating a dispute between a New

York law firm and its client that is governed by New York law.  As the Supreme Court has

emphasized, the most important interest, and "primary concern," is the burden on a defendant,

including the burden of not being forced to "submit[] to the coercive power of a State that may

have little legitimate interest in the claims in question."  *Bristol-Myers*, 582 U.S. at 263.  Here,

defendants have an interest in not being haled into court in the District of Columbia for claims

arising from legal work performed in New York for a client from Nevada being investigated by a

federal agency in Colorado.  These factors all militate against the exercise of personal

jurisdiction.

## III.   The Parties' Engagement Agreement Mandates Arbitration.

The Complaint is barred for a third, independent reason: defendants provided all legal

services under an engagement agreement that contains a mandatory arbitration provision that

requires plaintiffs to arbitrate their claims.  If the Court determines it has subject-matter

jurisdiction, it must dismiss on this independent ground.

A court considers a request to compel arbitration under a summary judgment standard. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017); *Aliron Int'l, Inc. v. Cherokee Nation Indus.*, 531 F.3d 863, 865 (D.C. Cir. 2008).[10]  A party seeking to enforce arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made.  This burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed." *Sakyi v. Estee Lauder Cos.*, 308 F. Supp. 3d 366, 375 (D.D.C. 2018) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)).  "The burden then shifts to [the non-moving party] 'to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in [Rule] 56.'" *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 89 (D.D.C. 2012) (quoting *Grosvenor v. Qwest Commc'ns Int'l*, 2010 WL 3906253, at *5 (D. Colo. Sept. 30, 2010)); *see Hines*, 380 F. App'x at 24.  "The court must order arbitration 'if there is no genuine issue of material fact regarding the requirements to compel arbitration.'" *Hidalgo v. Amateur Athletic Union*, 468 F. Supp. 3d 646, 654 (S.D.N.Y. 2020) (quoting *Nat'l Union Fire Ins. v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 317 (S.D.N.Y. 2016)); *see Booker v. Robert Half Int'l Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004), *aff'd*, 413 F.3d 77 (D.C. Cir. 2005).

Here, Collector's Coffee entered into an engagement agreement with Debevoise in January 2018.  Compl., Ex. 1.  Kontilai signed the agreement for Collector's Coffee.  *Id.* at 5.  The agreement states that "[i]f additional services [we]re requested and agreed to, . . . th[e] letter [would] apply to such services, unless superseded by another written engagement letter."  *Id.* at

---

[10] Although a motion to compel arbitration does not technically fall within the scope of Rule 12(b), the Federal Arbitration Act ("FAA") provides "that a party must 'petition' the court for an order directing arbitration to proceed," and courts therefore "allow the party to 'petition' the court through the use of a motion to dismiss for lack of subject matter jurisdiction." *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 66 (D.D.C. 2003) (Walton, J.) (ruling on motion to dismiss and compel arbitration under same standard as governs Rule 56 motions).

1.   Such services, including Debevoise's representation of Kontilai when he testified before the SEC, were requested and agreed to; as plaintiffs allege, Debevoise represented Kontilai.  Compl. ¶¶ 3, 63.

The engagement agreement contains a mandatory arbitration provision.  It states that "any dispute or claim arising out of or in any way relating to our representation of you (including, without limitation, any claim of malpractice, breach of contract or relating to fees or charges for the representation) shall be finally settled by arbitration."  Compl., Ex. 1, p.3. Plaintiffs do not allege that the agreement is unenforceable.  Because there is no dispute concerning the existence, making, or enforceability of the engagement agreement, the Court must dismiss the Complaint and order any claims submitted to arbitration.[11]

### A.        The Arbitration Provision Is Valid And Enforceable.

Arbitration is "a matter of contract."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  The Federal Arbitration Act ("FAA") governs engagement agreements, which are contracts that involve interstate commerce.  9 U.S.C. § 2.  The agreement here is between Collector's Coffee, a Nevada corporation, and Debevoise, a partnership headquartered in New York.  Kontilai, who fled to Russia and is now in custody in Germany pursuant to an arrest warrant, asserts that Debevoise represented him pursuant to the agreement.  Compl., Ex. 1.

The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms."  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407,

---

[11] The agreement provides that "any matters relating to or arising directly or indirectly out of the relationship . . . shall be governed by and construed in accordance with the laws of the State of New York."  Compl., Ex. 1. Defendants thus cite New York as well as D.C. law, which does not materially differ.

1412 (2019).  When a party resists arbitration, the other party may petition a federal court that

otherwise would have subject-matter jurisdiction "for an order directing that such arbitration

proceed in the manner provided for in [their written arbitration] agreement."  9 U.S.C. § 4.

District courts, the Supreme Court has held, "*shall* direct the parties to proceed to arbitration on

issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds Inc. v. Byrd*,

470 U.S. 213, 218 (1985).  Under the FAA, courts analyze arbitration provisions "to determine

whether (1) the parties entered into a valid and enforceable arbitration agreement and, if they did,

(2) does the arbitration agreement encompass the claims raised in the complaint[.]"  *Nelson v.

Insignia/Esg, Inc.*, 215 F. Supp. 2d 143, 149-50 (D.D.C. 2002) (Walton, J.); *see Unique

Woodworking, Inc. v. N.Y. City Dist. Council of Carpenters' Pension Fund*, 2007 WL 4267632,

at *4 (S.D.N.Y. Nov. 30, 2007).  If so, "the role of the court ends and the matter is one for

arbitration."  *Unique Woodworking*, 2007 WL 4267632, at *4.

    The first inquiry looks at whether the parties entered into a valid and enforceable

arbitration agreement.  The FAA directs courts to consider whether the provision should "be

declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any

contract, . . . such as fraud, duress, or unconscionability.'"  *AT&T Mobility LLC v. Concepcion*,

563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs. v. Casarotto,* 517 U.S. 681, 687 (1996)); *see*

9 U.S.C. § 2.  "To determine whether the parties have executed a valid arbitration agreement,

federal courts apply state contract law."  *Mobile Now, Inc. v. Sprint Corp.*, 393 F. Supp. 3d 56,

63 (D.D.C. 2019) (citation omitted).  "New York contract law presumes that a written agreement

is valid and that it accurately reflects the intention of the parties, and imposes a heavy burden on

the party seeking to disprove those presumptions."  *Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp.

826, 831 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2d Cir. 1997).  District of Columbia law is the

same.  *See, e.g.*, *Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 278 (D.C. Cir.

2014).  A party "who signs or accepts a written contract . . . is conclusively presumed to know its

contents and to assent to them."  *Gold v. Deutsche AG*, 365 F.3d 144, 149 (2d Cir. 2004)

(alteration in original) (quoting *Metzger v. Aetna Ins. Co.*, 125 N.E. 814, 815 (N.Y. 1920));

*Tauber v. Quan*, 938 A.2d 724, 734 n.29 (D.C. 2007).

Plaintiffs have not asserted that the arbitration provision is invalid or unenforceable.  To

the contrary, they tout the engagement agreement, asserting that it evidences the parties'

agreement.  Compl. ¶¶ 62-63, 66-68 & Ex. 1.  Plaintiffs even attached the engagement agreement

as Exhibit 1 to their Complaint and seek to enforce its terms by bringing an affirmative breach-

of-contract claim.  *See id.* ¶¶ 198-202.  Its validity and enforceability are undisputed.

The second inquiry under the FAA is whether the agreement encompasses plaintiffs'

claims.  That, too, is met.  The agreement requires arbitration of "any dispute or claim arising out

of or in any way relating to [Debevoise's] representation," specifically "including . . . any claim

of malpractice [or] breach of contract."  Compl., Ex. 1, p.3.  As set forth in the opening

paragraph of the Complaint, plaintiffs allege that their claims stem from Debevoise's

representation of Kontilai and Collector's Coffee during the SEC's investigation.  Compl. at 2

("[R]etained under the Engagement Agreement of January 10, 2018, Defendants abysmally

failed in their duties to represent Plaintiffs in a [SEC] investigation").  Any claims arising from

that representation are encompassed by the engagement agreement.

**B.      The Complaint Should Be Dismissed.**

The Court may "dismiss[] an action all together" when "all issues raised in the complaint

must be submitted to arbitration."  *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 2006 WL

1793295 (D.D.C. June 28, 2006), *aff'd*, 531 F.3d 863 (D.C. Cir. 2008).  The arbitration clause

requires the issues in plaintiffs' Complaint to be arbitrated, "and, therefore, no issues are left for

this Court to resolve."  *Ryan v. BuckleySandler, LLP*, 69 F. Supp. 3d 140, 149 (D.D.C. 2014).

Accordingly, the Court should dismiss the claims.  *See Haire v. Smith, Currie & Hancock LLP*,

925 F. Supp. 2d 126, 127, 134 (D.D.C. 2013).

## IV.     The Complaint Should Be Dismissed Under the Fugitive Disentitlement Doctrine.

The fugitive disentitlement doctrine also independently warrants dismissal.  In August

2019, Kontilai fled the United States to avoid the SEC's enforcement action against him; he

remained a fugitive in Russia until he was arrested in Germany earlier this year.  Compl. ¶¶ 138,

162; *SEC v. CCI*, Dkt. 1251 at 1.  Kontilai currently is detained in Germany pending extradition

proceedings to the United States.  *SEC v. CCI*, Dkt. 1251 at 1.  As a fugitive defying judicial

process, Kontilai should not be allowed to invoke this Court's process on the very same issues.

Although courts treat motions under the fugitive disentitlement doctrine "as something like a

motion to dismiss," they also "look at matters outside the pleadings."  *United States v.*

*$6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30, 38 (D.D.C. 2007).

Kontilai's misconduct by defying judicial process "disentitles [him] to call upon the

resources of the Court for determination of his claims."  *Id.* at 35 (quoting *Molinaro v. New*

*Jersey*, 396 U.S. 365, 366 (1970) (per curiam)).  A "fugitive should not be able to exploit judicial

processes to his advantage in one matter while scoffing at them in another."  *Id.*  "Many cases

[have] applied the doctrine to bar fugitives from seeking relief as plaintiffs in civil suits,

concluding that the rule of fugitive disentitlement in criminal cases should apply with greater

force in civil cases where an individual's liberty is not at stake."  *Id.* (citation omitted).  This

doctrine "1) assur[es] the enforceability of any decision that may be rendered against the

fugitive; 2) impos[es] a penalty for flouting the judicial process; 3) discourag[es] flights from

justice and promoting the efficient operation of the courts; and 4) avoid[s] prejudice to the other

side caused by the defendant's escape." *Empire Blue Cross & Blue Shield v. Finkelstein*, 111

F.3d 278, 280 (2d Cir. 1997).

All of these considerations support applying the doctrine here.

*First*, Kontilai currently is evading two federal criminal prosecutions, he has made clear

he does not intend to return to the United States, *SEC v. CCI*, Dkt. 229, at 1 (notifying court of

residence in Russia), and his flight will make it extraordinarily difficult to enforce decisions

against him.  For example, in the related SEC enforcement action, Kontilai's flight has resulted

in delays and difficulties at every stage, as he repeatedly has refused to comply with basic

discovery obligations, including producing documents and depositions.  As the Court in New

York found, Kontilai and Collector's Coffee have "taken numerous improper actions to delay

th[at] case, including engaging in highly dilatory tactics in the discovery process, filing

numerous frivolous applications, and . . . requir[ing] the court to address numerous frivolous

arguments." *SEC v. CCI*, Dkt. 884, at 10.[12]  There is no reason to expect different conduct here.

Indeed, plaintiffs' pursuit of this case violates the TRO that the court imposed in the SEC

enforcement action, where the court ordered that "[n]o person or entity, including Defendants

Collector's Coffee or Mykalai Kontilai . . . shall take any action to interfere with the asset freeze,

including, but not limited to, the filing of any lawsuits." *SEC v. CCI*, Dkt. 12, at 5; *see id.* Dkt.

988 at 18-20, 23-26.

*Second*, Kontilai has impeded judicial process by refusing to return to the United States

to face two federal criminal prosecutions which, as discussed, concern the exact same issues

---

[12] *See also, e.g.*, *SEC v. CCI*, Dkt. 767, at 31 (court finding Kontilai's motions and discovery objections "utterly meritless and possibly frivolous;" "he (or his attorneys) deliberately wasted a good deal of the Court's and the parties' time in the manner in which he litigated the production of the tax returns"); *id.*, Dkt. 497, at 1-2 (SEC asserting that Kontilai failed to comply with court order and seeking to hold him in contempt for bad faith delays); *id.*, Dkt. 533, at 2-4 (SEC identifying difficulties and delays in scheduling Kontilai and Collector's Coffee's depositions).

Kontilai has placed at issue here.  Kontilai may argue that he is no longer a fugitive because he is currently in detention in Germany and subject to extradition proceedings, but that does not affect his fugitive status under the doctrine.  The doctrine still applies, notwithstanding an individual's arrest in a foreign country, "[w]here an individual is being detained in a foreign country only because the foreign sovereign is seeking to extradite the individual pursuant to a United States arrest warrant."  *United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-0038*, 617 F. Supp. 2d 103, 125 (S.D.N.Y. 2017).  As Kontalai disclosed, he "was apprehended in Germany by German authorities pursuant to the Interpol Red Notice that had been issued in connection with the pending criminal charges in the U.S. which are co-extensive with the SEC's allegations" in the SEC enforcement action.  *SEC v. CCI*, Dkt. 1210 at 1. Additionally, Kontilai is fighting extradition and acknowledges that he may not be returned to the United States when those proceedings conclude.  *SEC v. CCI*, Dkt. 1251 at 2.  Where, as here, Kontilai has been detained because the United States seeks to extradite him pursuant to a United States arrest warrant, the fugitive disentitlement doctrine fully applies.

*Third*, dismissal would promote the efficient operation of the courts.  Kontilai has fled the United States and not appeared in the Districts of Colorado or Nevada to defend himself on the same matters he seeks to litigate here.  Adjudicating these first-filed cases can resolve all issues in this lawsuit, and dismissal would promote the efficient litigation of the claims asserted.

*Fourth*, dismissal would prevent potential prejudice to Debevoise from Kontilai's flight which, together with his unavailability, threaten to adversely affect these proceedings.  If permitted to proceed in federal court, Kontilai's claims are pursued most efficiently in New York where he and the SEC are litigating the same issues so that he cannot simultaneously use his absence as a sword and shield in related cases.  For example, he should not be allowed to

participate in discovery differently as a plaintiff than as a defendant.  Moreover, it would be patently unfair to allow Kontilai to invoke this Court's process in an attempt to shift blame for his own conduct to his former attorneys while simultaneously refusing to face criminal charges or appear at his own trial in the SEC enforcement action, all of which concern the same issues as here.  *See SEC v. CCI*, Dkt. 1251.  Dismissal would prevent such unfairness and prejudice.

## V.     Alternatively, the Court Should Transfer This Case to the Southern District of New York.

Alternatively, if the Court does not dismiss this case, it should transfer the case pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York where the SEC enforcement action concerning the same issues has been pending for more than four years, trial on those issues is set for October 2023, and venue for litigating those issues is more convenient and appropriate.

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "Courts in this district have consistently held that '[t]he interests of justice are better served when a case is transferred to the district where related actions are pending.'"  *Bartolucci v. 1-800 Contacts, Inc.*, 245 F. Supp. 3d 38, 50 (D.D.C. 2017) (alteration in original) (quoting *Martin-Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987)); *see Barham v. UBS Fin. Servs.*, 496 F. Supp. 2d 174, 180 (D.D.C. 2007) ("most significant factor" supporting transfer "is the presence of closely related litigation" in another district).  These considerations are particularly important where, as here, the related action may have a preclusive effect.  *See Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 57 (D.D.C. 2000) (transferring venue because transferee court "is in the best position to determine which claims or issues in the instant complaint are precluded by its own decision").  The decision to transfer requires an "individualized, 'factually analytical, case-by-case determination of convenience and fairness.'"

*New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 94 (D.D.C. 2010) (citation omitted).

The SEC's action against Kontilai and Collector's Coffee in the Southern District of New York is closely related to this case. Both cases arise from Kontilai's production of fabricated documents to the SEC, and they are based on the same set of facts. *Compare SEC v. CCI*, Dkt. 134 (Nov. 4, 2019), ¶¶ 101-09, 143-45 (SEC's Amended Complaint alleging that "Kontilai fabricated multiple documents" to produce to SEC, including "employment agreement, promissory note, and bank statement") *with* Compl., Dkt. 1, ¶¶ 82-118, 169-70, 180-81, 200, 206, 210 (Kontilai and Collector's Coffee's allegations on same issue here). Indeed, plaintiffs repeatedly have represented to this Court that the "facts and subject matter of the present case overlap with the facts and subject matter at issue in *SEC v. CCI*," this "case should be stayed so the parties here have the benefit of any order, findings of fact, or conclusions of law issued by the Court in *SEC v. CCI*," and "[r]esolution of the SEC's remaining claims [in *SEC v. CCI*] will involve many of the same facts and issues involved in this case." *See, e.g.*, Dkt. 20, at 1, 2, 4. A transfer is appropriate where, as here, a related case undisputedly has "the same factual underpinning" and both cases "arise from the same . . . investigation" or circumstances. *Comptroller of Currency v. Calhoun First Nat'l Bank*, 626 F. Supp. 137, 141 (D.D.C. 1985).

Moreover, the SEC action is significantly further advanced. The SEC's enforcement action has been pending for more than four years, the federal court in New York that is adjudicating that case is intimately familiar with the issues, the docket in that case is more than 1250 entries long, more than 15 depositions (including Mr. Ceresney's) were taken, fact and expert discovery have closed, summary judgment has been adjudicated, and trial is set for October 3, 2023. *See SEC v. CCI*, Dkts. 624, 745, 854, 1216. "[L]itigation in this Court of

liability issues closely similar to issues pending for over two years in another federal court would be a grossly inefficient use of judicial resources." *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979).  The issues presented in this case have been pending for years in the Southern District of New York and, as in *Boeing*, allowing this parallel lawsuit to proceed on the same issues would be "grossly inefficient." *Id.*

Moreover, as plaintiffs repeatedly have represented to this Court, adverse rulings in the SEC action may completely dispose of this case.  *See, e.g.*, Dkt. 20 at 4 (plaintiffs asserting that "findings of fact and conclusions of law, as well as the outcome of the forthcoming [SEC] trial, may completely dispose of, or significantly narrow, this action"); Dkts. 9-15, 19 (similar).  For example, findings of fact or conclusions of law against Kontilai or Collector's Coffee concerning whether Kontilai fabricated documents or engaged in other misconduct likely will have preclusive effects here.  *See, e.g.*, *U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 696 (D.C. Cir. 2009) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) ("Defensive  use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries." (citation omitted)).  The court adjudicating the SEC action is "better suited to determining, in the first instance, which issues and claims in the instant complaint are precluded by its decision." *Reiffin*, 104 F. Supp. 2d at 57.

The parties' private interests also support transfer.  "Private interest considerations traditionally include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof." *Holland v. A.T. Massey Coal*, 360 F.

Supp. 2d 72, 76 (D.D.C. 2004).  The first factor—plaintiff's choice of forum—"is far from

dispositive" where "the case has minimal connection to the District of Columbia and other

factors militate strongly in favor of transfer."  *Airport Working Grp. v. DOD*, 226 F. Supp. 2d

227, 231 (D.D.C. 2002); *see Holland*, 360 F. Supp. 2d at 76 (deference to plaintiff's forum

choice "is mitigated" where "connection between the controversy, the plaintiff, and the chosen

forum is attenuated").  In addition, "[t]he location of counsel 'carries little, if any, weight.'"

*Reiffin*, 104 F. Supp. 2d at 52 n.7 (quoting *Vencor Nursing Ctrs. v. Shalala*, 63 F. Supp. 2d 1, 6

n.4 (D.D.C. 1999)).

Every private interest factor here favors transfer to New York.  Plaintiffs' chosen forum

has no connection to this case, and it is not their home forum.  *See Barham*, 496 F. Supp. 2d at

178 ("substantially less deference" when "plaintiff is not a resident" of chosen forum).

Conversely, New York is Debevoise's principal place of business and where nearly all relevant

events occurred.  *See Martin-Trigona v. Meister*, 668 F. Supp. 1, 4 (D.D.C. 1987) (transfer to

venue where "both defendants, not to mention plaintiff, reside" and "a substantial portion of the

acts or omissions giving rise to the action occurred").  Plaintiffs cannot credibly complain that

litigating in New York is inconvenient when they are "already embroiled in litigation there."

*Reiffin*, 104 F. Supp. 2d at 53 (quoting *Colortyme Fin. Servs. v. Kivalina Corp.*, 940 F. Supp.

269, 275 n.4 (D. Haw. 1996)).  Nor can plaintiffs argue that the District of Columbia is more

convenient for witnesses when they have not alleged that a single witness resides in or near the

District.  Finally, New York will provide "easier access to sources of proof, given . . . the

considerable amount of completed discovery available on related liability issues" in the pending

SEC action.  *Islamic Republic*, 477 F. Supp. at 144.  Further, physical evidence, such as hard

copy documents or notes, if any, would reside in New York.  Indeed, plaintiffs already deposed

Mr. Ceresney in the SEC enforcement action about substantially similar issues.  As the court in the SEC action observed, plaintiffs "questioned Ceresney for nearly seven hours" and "abuse[d] the deposition" by using "an inordinate amount of time to probe into matters" relevant only to this malpractice action.  *SEC v. CCI*, Dkt. 884 at 17, Order.

Finally, under the asset freeze order currently in place in the SEC action, the parties will need to litigate certain issues in that court before this case can even proceed.  For example, plaintiffs must file certain documents and make specific representations to that court before pursuing this case, and Debevoise would seek that court's approval to assert its compulsory counterclaim for more than $1 million in unpaid legal fees.  This case cannot even get started without that court's involvement, confirming the propriety of a transfer.

<u>**CONCLUSION**</u>

For the foregoing reasons, defendants respectfully request that the Court dismiss or, alternatively, transfer this case.

Respectfully submitted,

*/s/ Dane H. Butswinkas*
Dane H. Butswinkas (D.C. Bar No. 425056)
David S. Blatt (D.C. Bar No. 433311)
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
dbutswinkas@wc.com
dblatt@wc.com

*Attorneys for Defendants Debevoise & Plimpton LLP, Andrew J. Ceresney, Dustin Brockner, and Miheer Mhatre*

Dated: August 7, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on August 7, 2023, the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

/s/ Dane H. Butswinkas
Dane H. Butswinkas