**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

COLLECTOR'S COFFEE INC., dba
COLLECTOR'S CAFÉ INC.

MYKALAI KONTILAI

    Plaintiffs,

     v.

DEBEVOISE & PLIMPTON LLP;

ANDREW CERESNEY;

DUSTIN BROCKNER;

MIHEER MHATRE

Civ. Action No. 1:20-cv-02988-RBW

**RULE 59(e)**

**MOTION PURSUANT TO RULE 59(e) OF FEDERAL RULES OF CIVIL PROCEDURE**
**TO ALTER OR AMEND ORDER OF DISMISSAL DATED NOVEMBER 8, 2023**

**WITH MEMORANDUM OF POINTS AND AUTHORITIES ENCLOSED.**

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiffs Collector's Coffee Inc. ("Collector's Coffee") and Mykalai Kontilai ("Kontilai") or collectively, the "Plaintiffs" respectfully move to alter the Orders and rulings on November 8, 2023, dismissing this action upon a Motion to Dismiss ("MTD") brought by Defendants Debevoise & Plimpton LLP ("Debevoise Plimpton"), its partner Andrew Ceresney ("Ceresney"), and its two associates Dustin Brockner ("Brockner") and Miheer Mhatre ("Mhatre"), who are now former associates.

The present Motion argues that the Court overlooked that the jurisdiction of this District Court is proper under the statutory provision: "arising under the ... laws ... of the United States," 28 U.S.C. § 1331". The Motion also shows that the Plaintiffs did have—and have—a good faith

belief that the jurisdictional discovery will establish that the four purported stateless citizen partners in London are not true partners in the New York partnership and have no percentage stake in it, contrary to the requirements of the New York State and U.S. Internal Revenue Service.

The Motion relies on the record and the conference transcript, in this case on November 8, 2023, attached as an Appendix.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION.

The Defendants raised jurisdictional issues and objections two years and 10 months after being served, bringing up, without any prior notices, a "stateless citizen partner" attack on the jurisdiction of the Federal Court that has been undisclosed and unavailable in the public domain. While ruling on the limited submission of evidence concerning purported four "stateless citizen partners," who filed self-serving Affidavits and heavily redacted partnership documents, not asserting any percentage interest of ownership in the partnership, the Court did not adequately address the other issues submitted in Opposition to the MTD. That included the Plaintiffs relying on the statutory provision: "arising under the ... laws ... of the United States," 28 U.S.C. § 1331, as well as their good faith belief that jurisdictional discovery will establish that the purported four stateless citizen partners in London have no stake of ownership in the New York partnership and are not true partners.

A. **LEGAL STANDARD ON MOTIONS UNDER RULE 59(e) MOTIONS, SUMMARY OF POINTS.**

District courts have "substantial discretion in ruling on motions for reconsideration" pursuant to Federal Rule of Civil Procedure 59(e), *Black v. Tomlinson*, 235 F.R.D. 532, 533 (D.D.C.2006), and courts must apply a "stringent" standard when evaluating these motions. *Ciralsky v. CIA*, 355 F.3d 661, 673 (D.C.Cir.2004). Courts should not grant a motion to alter or amend under Rule 59(e) unless one of three circumstances *219 exist: (1) an "intervening change

of controlling law," (2) "the availability of new evidence," or (3) "the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1280 (D.C.Cir.1996) (quoting *Nat'l Trust v. Dep't of State*, 834 F.Supp. 453, 455 (D.D.C.1993).

With due respect, the Court overlooked that the jurisdiction of this District Court is proper under the statutory provision: "arising under the ... laws ... of the United States," 28 U.S.C. § 1331". The present action is permeated by the application or interpretation of the duties and conduct under over 30 Federal Statutes. Those include the securities statutes under Title 15 U.S. Code, Title 18 U.S. Code, and the Code of Federal Regulations, e.g., governing the U.S. Securities and Exchange Commission's procedures. The Court overlooked that the jurisdiction of this District Court is proper under the line of cases following the Supreme Court's *Grable& Sons Metal Products, Inc. v. Darue Engineering & Mfg*. 545 U.S. 308, creating an exception for cases where the federal law question is substantial, followed by *Merrill Lynch, Pierce, Fenner & Smith v. Manning*, 136 S.Ct. 1562.

## B.    THIS ACTION IS PERMEATED BY THE APPLICATION AND INTERPRETATION OF FEDERAL STATUTES AND REGULATIONS.

It is also uncontested by the Defendants that their representation concerned the U.S. Securities and Exchange Commission investigation.

As an integral part of such representation, the Defendants were to be guided by the numerous Federal Statutes, particularly concerning Title 15 of the U.S. Code pertaining to the securities and Title 18 of the U.S. Code Chapter 73 pertaining to obstruction of justice. As pleaded in the Complaint, in their attempted legal representation, the Defendants failed to follow the federal law.

Given the totality of the circumstances, the following statutes were relevant for the investigation of the SEC:

**(i)    Statutes That Should Be Treated as Relevant for Adjudging Claims for Legal Representation in the SEC's Investigation**

15 U.S. Code    Subchapter I – Domestic Securities

§ 77b.  Definitions; promotion of efficiency, competition, and capital formation

§ 77c. Classes of securities under this subchapter

§ 77d. Exempted transactions

§ 77d–1. Requirements with respect to certain small transactions

§ 77e. Prohibitions relating to interstate commerce and the mails

§ 77f. Registration of securities

§ 77g.  Information required in registration statement

§ 77h.  Taking effect of registration statements and amendments thereto

§ 77h–1.  Cease-and-desist proceedings

§ 77i. Court review of orders

§ 77j. Information required in prospectus

§ 77k. Civil liabilities on account of false registration statement

§ 77l. Civil liabilities arising in connection with prospectuses and communications

§ 77m.  Limitation of actions

§ 77n. Contrary stipulations void

§ 77o. Liability of controlling persons

§ 77p. Additional remedies; limitation on remedies

§ 77q. Fraudulent interstate transactions

§ 77r. Exemption from State regulation of securities offerings

§ 77r–1. Preemption of State law

§ 77s. Special powers of Commission

§ 77t.  Injunctions and prosecution of offenses

§ 77u. Hearings by Commission

§ 77v. Jurisdiction of offenses and suits

§ 77w. Unlawful representations

§ 77x. Penalties

§ 77y. Jurisdiction of other Government agencies over securities

§ 77z. Separability

§ 77z–1. Private securities litigation

§ 77z–2. Application of safe harbor for forward-looking statements

§ 77z–2a. Conflicts of interest relating to certain securitizations

§ 77z–3. General exemptive authority

§ 77aa. Schedule of information required in registration statement.

**(ii)    Statutes that Should Be Deemed Relevant for Adjudication of Claims of Obstruction of Justice in the Course of Legal Representation.**

Both Indictments exhibited by the Defendants in the MTD were largely based upon Ceresney's representing Kontilai at the deposition before the SEC officers and when selecting documents for production to the SEC under the subpoenas.

Those acts or failures to act on the side of the Defendants include the interpretation of the following statutes:

18 U.S. Code Chapter 73 – Obstruction of Justice

§ 1505.  Obstruction of proceedings before departments, agencies, and committees

§ 1506.  Theft or alteration of record or process; false bail

§ 1510.  Obstruction of criminal investigations

§ 1512.  Tampering with a witness, victim, or an informant

§ 1519.  Destruction, alteration, or falsification of records in Federal investigations and bankruptcy

**C.    DEBEVOISE'S CONDUCT WAS SUBJECT TO PART 203, RULES RELATING TO INVESTIGATIONS; THE ALLEGED MISCONDUCT OF DEBEVOISE IN PART GOVERNED BY SEC'S RULES**

Debevoise and its three attorneys offered their services to the Plaintiffs and were retained, nearly exclusively for representing the Plaintiffs in the investigation by the U.S. Securities and Exchange Commission.  See Exh. 1 to Cmplt.  The source of authority for Part 203 were statutes 15 U.S.C. 77s, 77sss, 78w, 80a–37, and 80b–11, as well as 29 FR 3620.

Part 203 represents a detailed and formalized set of rules and regulations under federal law, controlling all aspects of the investigations.[1]

Debevoise was responsible for defending Kontilai at the questioning in the SEC's office in Denver.  Representing a witness, in turn, was subject to regulations.[2]

---

[1] PART 203—RULES RELATING TO INVESTIGATIONS (Excerpts)
"Subpart A—In General
§ 203.1 Application of the rules of this part. (Omitted)
§ 203.2 Information obtained in investigations and examinations.
Information or documents obtained by the Commission in the course of any investigation or examination, unless made a matter of public record, shall be deemed non-public, but the Commission approves the practice whereby officials of the Divisions of Enforcement, Corporation Finance, Market Regulation and Investment Management and the Office of International Affairs at the level of Assistant Director or higher, and officials in Regional Offices at the level of Assistant Regional Director or higher, may engage in and may authorize members of the Commission's staff to engage in discussions with persons identified in § 240.24c-1(b) of this chapter concerning information obtained in individual investigations or examinations, including formal investigations conducted pursuant to Commission order.
§ 203.3 Suspension and disbarment. (Omitted)
Subpart B—Formal Investigative Proceedings
§ 203.4 Applicability of §§ 203.4 through 203.8. (Omitted)
§ 203.5 Non-public formal investigative proceedings. (Omitted)
§ 203.6 Transcripts. (Omitted)
(1) advise such person before, during and after the conclusion of such examination,
(2) question such person briefly at the conclusion of the examination to clarify any of the answers such person has given, and
(3) make summary notes during such examination solely for the use of such person.
(d) Unless otherwise ordered by the Commission, in any public formal investigative proceeding, if the record shall contain implications of wrongdoing by any person, such person shall have the right to appear on the record; and in addition to the rights afforded other witnesses hereby, he shall have a reasonable opportunity of cross-examination and production of rebuttal testimony or documentary evidence. Reasonable shall mean permitting persons as full an opportunity to assert their position as may be granted consistent with administrative efficiency and with avoidance of undue delay. The determination of reasonableness in each instance shall be made in the discretion of the officer conducting the investigation."

[2] § 203.7 Rights of witnesses.
(a) Any person who is compelled or requested to furnish documentary evidence or testimony at a formal investigative proceeding shall, upon request, be shown the Commission's order of investigation. Copies of formal orders of investigation shall not be furnished, for their retention, to such persons requesting the same except with the express approval of officials in the Regional Offices at the level of Assistant Regional Director or higher, or officials in the Division or Divisions conducting or supervising the investigation at the level of Assistant Director or higher.

**D.    ALLEGED MISCONDUCT OF DEBEVOISE WAS SUBJECT TO CFR, PART 205, STANDARDS OF PROFESSIONAL CONDUCT FOR ATTORNEYS PRACTICING BEFORE THE SEC**

The alleged malpractice of Debevoise and its attorneys should not be measured under merely the Rules of Professional Conduct of the D.C. Bar.  The U.S. Securities and Exchange Commission has its own rules and regulations for representing securities issuers, such as Collector's Coffee, memorialized as Part 205 and included in the Code of Federal Regulations. Those rules for attorneys practicing before the SEC are based on a series of statutes, such as 5 U.S.C. 77s, 78d–3, 78w, 80a–37, 80a–38, 80b–11, 7202, 7245, and 7262, including 68 FR 6320.

The Rules are more stringent than the norms and standards of practice under the DC Bar Rules of Professional Conduct.[3]   The disclaimer is that the SEC's Rules under Part 205 do not create a cause of action.

_____

Such approval shall not be given unless the person granting such approval, in his or her discretion, is satisfied that there exist reasons consistent both with the protection of privacy of persons involved in the investigation and with the unimpeded conduct of the investigation.
(b) Any person compelled to appear, or who appears by request or permission of the Commission, in person at a formal investigative proceeding may be accompanied, represented and advised by counsel, as defined in § 201.101(a) of this chapter (Rule 101(a) of the Commission's rules of practice): Provided, however, That all witnesses shall be sequestered, and unless permitted in the discretion of the officer conducting the investigation no witness or the counsel accompanying any such witness shall be permitted to be present during the examination of any other witness called in such proceeding.
(c) The right to be accompanied, represented and advised by counsel shall mean the right of a person testifying to have an attorney present with him during any formal investigative proceeding and to have this attorney."

[3] CODE OF FEDERAL REGULATIONS. PART 205—STANDARDS OF PROFESSIONAL CONDUCT FOR ATTORNEYS APPEARING AND PRACTICING BEFORE THE COMMISSION IN THE REPRESENTATION OF AN ISSUER.  § 205.1 Purpose and scope. This part sets forth minimum standards of professional conduct for attorneys appearing and practicing before the Commission in the representation of an issuer. These standards supplement applicable standards of any jurisdiction where an attorney is admitted or practices and are not intended to limit the ability of any jurisdiction to impose additional obligations on an attorney not inconsistent with the application of this part. Where the standards of a state or other United States jurisdiction where an attorney is admitted or practices conflict with this part, this part shall govern.

However, those establish the standards for duty of care, which are more generally governed by the DC Bar's Rules of Professional Conduct.  It is axiomatic that the U.S. District Court is better suited to consider and adjudicate issues stemming from the alleged negligence of Debevoise and its attorneys in representing Plaintiffs before that Federal Commission.

In that connection, *Merrill Lynch Pierce Fenner & Smith Inc. v. Manning*, 136 136 S.Ct. 1562, decided by the Supreme Court on May 16, 2016, is instructive.  (The Supreme Court held that Securities Exchange Act provision, granting federal courts exclusive jurisdiction of suits brought to enforce any liability or duty created by the Act, confers exclusive federal jurisdiction of the same suits as "arise under" the Act pursuant to the general federal question statute; abrogating *Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49; *Sparta Surgical Corp. v. National Assn. of Securities Dealers, Inc.*, 159 F.3d 1209; *Hawkins v. National Assn. of Securities Dealers, Inc.*, 149 F.3d 330.  Indeed, Section 27 of the Securities Exchange Act…, 48 Stat.  992, as amended, 15 U.S.C. § 78a, et seq., grants federal district courts exclusive jurisdiction "of all suits in equity and actions at law brought to enforce any *377 liability or duty created by [the Exchange Act] or the rules or regulations thereunder." §78aa(a)."

The Court went on to state: "We hold today that the jurisdictional test established by that provision is the same as the one used to decide if a case "arises under" a federal law.  See 28 U.S.C.

---

§ 205.2 Definitions. For purposes of this part, the following definitions apply:
(a) Appearing and practicing before the Commission: (omitted)
(d) Breach of fiduciary duty refers to any breach of fiduciary or similar duty to the issuer recognized under an applicable Federal or State statute or at common law, including but not limited to misfeasance, nonfeasance, abdication of duty, abuse of trust, and approval of unlawful transactions. (e) Evidence of a material violation means credible evidence, based upon which it would be unreasonable, under the circumstances, for a prudent and competent attorney not to conclude that it is reasonably likely that a material violation has occurred, is ongoing, or is about to occur. (Omitted)
(b) Duty to report evidence of a material violation. (omitted)
§ 205.4 Responsibilities of supervisory attorneys. (omitted).
§ 205.5 Responsibilities of a subordinate attorney. (Omitted).

§ 1331.  Congress has authorized the federal district courts to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331.  See *Shulthis v. McDougal*, 225 U.S. 56 132 S.Ct. 704.

See also a recent conclusion of a sister District Court, *Siantou v. DK Associates, LLC,* D. MD, Southern Div.  Feb. 16, 2023 Slip Copy 2023 WL 2071266 (In determining whether a claim "arises under" the laws of the United States, courts "abide by the 'well-pleaded complaint rule,' assessing whether the plaintiff's cause of action — as stated on the face of the Complaint — has some basis in federal law."

"The substantiality inquiry looks to the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. at 260.

### E.    JURISDICTIONAL DISCOVERY CONCERNING DEBEVOISE & PLIMPTON WAS WARRANTED UPON GOOD FAITH BELIEF TO PROVE DIVERSITY AND SHOULD HAVE BEEN ALLOWED.

At a conference on November 8, 2023, the Court overlooked the standard for the motions for jurisdictional discovery, even after the plaintiffs' counsel declared plaintiffs had good faith belief that such a discovery will show that there is complete diversity of citizenship in this action.

At the conference on November 8, 2023, the counsel for the Plaintiffs did assert and provided an argument that they had a "good faith belief" that jurisdictional discovery will establish the four purported partners of the New York partnership.  See Appendix, the transcript, in two versions, clean (without markings) first, followed by the version with the Plaintiffs' markings showing that argument that the Plaintiffs did have—and have—a good faith belief that jurisdictional discovery will establish that the four purported partners in London are not true partners under the laws of the State of New York.

There was no basis for the Court to qualify a "food faith belief," supported by five enumerated factors, as "speculative," as the Court ruled on November 8, 2023.  For example, the

4 Affidavits of the purported stateless citizen partners in London, submitted in this action, asserted that they paid their taxes in the U.S., presumptively their income taxes, but did not state that the partnership in New York paid taxes for them.  That omission spoke volumes and allowed a strong inference that the partnership did not list them in the partnership's forms in New York and the U.S. Internal Revenue Service, and they are not true partners under the State of New York law. Furthermore, throughout numerous submissions under seal, the Defendants never provided any documents pointing to any percentage stake in the partnership that those four partners would have, allowing to presume that none of them has a percentage stake in New York.

The Plaintiffs argue that the Court's unqualifiedly taking for granted merely the statements in four Affidavits as though the London-based attorneys are "partners," even when those were avoiding the critical issues for establishing the rights of a partner (e.g., percentage, taxes), was in error.

With due respect, the Court overlooked that the "standard for permitting jurisdictional discovery is quite liberal," and leave may be granted even when the plaintiff "has not made out a prima facie case of jurisdiction." *Diamond Chem. Co., Inc. v. Atofina Chems., Inc*., 268 F. Supp. 2d 1, 15 (D.D.C. 2003).   The present submission and exhibits show that the Plaintiffs have "a good faith belief that such discovery will enable [him] to show that the court has personal jurisdiction over the defendant." *Williams v. Romarm*, SA, 756 F.3d 777, 786 (D.C. Cir. 2014) (quoting *FC Inv. Grp. LC v. IFX Mkts., Ltd*., 529 F.3d 1087, 1093–94 (D.C. Cir. 2008)).

**F. THE COURT OVERLOOKED THAT NEW YORK STATE TAX REQUIREMENTS FOR PARTNERSHIPS AND FORMS, INCLUDING LISTING PARTNERS OVERSEAS ARE MANDATORY FOR COMPLIANCE.**

The Reply submission and the Affidavit of James Scoville, dated October 12, 2023, contain glaring omissions, which, in the context of the evidence from England and Wales discussed below, raises an assumption that the heavily redacted extracts from intra-firm documents obscured the

objective evidence, such as the mandatory taxation filings in New York State to corroborate or validate the claim of partner status.

New York State has stringent requirements for partnerships with nonresident partners. The four exhibits from the New York State Department of Taxation and Finance demonstrate that if the four partners of Debevoise were true partners, then several tax forms would have necessarily been mandatory in the State of New York. See Oppo to MTD, Exhs 1-4. Likewise, the IRS forms are also controlling. See Oppo to MTD., Exhs 5-6.

According to Federal Rule of Evidence 201, the Court overlooked that the Plaintiffs requested this Court to take judicial notice of four forms of the State of New York, listed below, submitted with the companion Declaration of the Plaintiffs' counsel in the Opposition papers responding to the MTD, which the Court did not specifically address, to wit:

- **Exhibit 1**, New York State, Department of Taxation and Finance, Instructions for Form IT-2658 Report of Estimated Tax for Nonresident, Individual Partners and Shareholders.

- **Exhibit 2**, New York, Instructions for Form IT-204, Partnership return, and related forms.

- **Exhibit 3**, New York Partner's Schedule K-1, Tax Law, Article 22.

- **Exhibit 4**, New York, Partner's Instructions, For Form IT-204-IP, New York Partner's Schedule K-1.

Taking judicial notice of State government documents, available on the government website, is proper. Otherwise, their authentication was sufficient.

In short, the New York partnership, the law firm Debevoise, would have been obligated to file tax returns in the State of New York **on behalf of nonresident partners** and/or list those by

their names.  Debevoise would have been required to list those nonresident partners in its tax forms in New York State, with their addresses overseas.  For example, to quote from Form 2658-NYS:

Specific instructions for Form IT-2658-NYS

"Complete columns A through D for each New York nonresident individual partner or shareholder for whom the entity is making an estimated personal income tax payment.
Column A – **Name and address of partner/shareholder**
**Foreign addresses** – Enter the information in the following order: city, province or state, and then country (all in the City, village, or post office box).  Follow the country's practice for entering the postal code.  Do not abbreviate the country name.
Column C – **Partner's/shareholder's percentage of ownership**
**Enter each nonresident individual partner's or shareholder's ownership percentage in the partnership** or corporation.  Round the percentage out to four decimal places only.  If the actual percentage of ownership is less than .0001, round the percentage to 00.0001.  If the current-year percentage is not available, enter the prior-year percentage.
Column D – Amount of estimated personal income tax paid **on behalf of partner or shareholder**".

In the MTD and the Reply, the Debevoise Defendants did not submit any evidence asserting that their New York LLP paid New York taxes on behalf of each or any of the four nonresident partners.

Instead, all four alleged nonresident partners in London indicated that they, not Debevoise, paid taxes for themselves in the U.S.  Accordingly, a logical assumption begs to be made that Debevoise, very likely, did not pay taxes on behalf of those four nonresident partners, thus making a purported partnership status invalid.

In the context of the submissions in the Reply and the MTD, it follows that Debevoise's submissions failed to indicate a percentage of the alleged ownership in the New York partnership held by every one of the four stateless citizen partners.  That gross omission tends to indicate that, very likely, no such percentage exists, as required in the State of New York.  Therefore, jurisdictional discovery is proper or required under these circumstances.

12

### G. NO ANALYSIS CONCERNING THE INTERNAL REVENUE SERVICE'S REQUIREMENTS FOR PARTNERSHIPS TO LIST FOREIGN PARTNERS.

The plaintiffs point out also that if the four alleged partners in London were true partners, then the following submissions would have been mandatory, required, disclosing the names of the partner(s) and the financial information concerning their percentage stake, to wit:

- **Exhibit 5**, IRS Form 1065, U.S. Return of Partnership Income.

- **Exhibit 6**, IRS Form 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax.

For example, Form 1065 states in Schedule B, Question 14: "Does the partnership have any foreign partners?  If "Yes," enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership'.

As another example, the forms require identifying the partnership's beneficiaries.  In the case of Debevoise, if its four alleged partners were true partners, they would have been listed and disclosed in those forms filed with the IRS, not only on the New York State forms.[4]

Nothing in the Affidavits of the four alleged partners would be inconsistent with the scenario that they have paid personal income taxes.

Still, Debevoise, if jurisdictional discovery were to reveal that the Defendants did not file the forms required for nonresident partners, which, in combination with the lack of the percentage of ownership, invalidates their claim of being true partners of the New York LLP under the State law of New York, the noncompliance with which makes it meaningless how the attorney in London name themselves, partners, associates, solicitors, etc.

---

[4] In their Memorandum in Opposition (on p. 9), the Plaintiffs stated: …"the regulations concerning taxation of the partnerships can be found in the Internal Revenue Service's instructions and guidelines. See https://www.irs.gov/publications/p541. If any of the four Affiants would claim to be true partners in a New York LLP, they would have been subject to the IRS's rigorous tax requirements."  The Defendants avoided to address that.

### H. OTHER INCONSISTENCIES AND CONTRADICTIONS IN THE DEFENDANTS' SUBMISSIONS WARRANTED JURISDICTIONAL DISCOVERY.

The Affidavit of James Scoville in the Defendants' Reply on October 12, 2023, makes statements about two partnerships, one in New York State and another in England and Wales.

However, Mr. Scoville did not reconcile his statements with the fact that the registration of the Foreign Limited Partnership took place only in January of 2023. Also, the partnership in England and Wales would be utterly irrelevant for analysis here because, according to Mr. Scoville, that is a different partnership. However, the registered foreign LLP had an office address in New York, meaning there was no mistake. See Exhibits 7-8 to the Opposition to the MTD submission by the Plaintiffs. The Scoville Affidavit can be viewed as confusing and contradictory, inconsistent with the official filings in London.

Merely referring to N.Y. Partnership Law, §10 et seq. in the internal firm's documents, extraordinarily heavily redacted, does not allow to get to the facts, necessitating limited jurisdictional discovery. For example, one of the redacted clauses could possibly contain provisions about taxes that are determinative.

Then, Mr. Coville alludes that Debevoise & Plimpton, organized as an <u>English Private Limited Company,</u> was somehow not involved in law practice. However, the very same attorneys and solicitors were listed. However, the Companies House of England and Wales does not contain an entry on another partnership with that name until January 2023. Mr. Scoville did not explain what that meant and why using the same name would be used, contrary to the requirements of the Rules of Professional Conduct not to use names for the practice that are confusing or misleading.

Again, after the reorganization in January 2023 and registration of the partnership in London, with the office address in New York, the documents filed in London say that none of those attorneys or solicitors has a beneficial ownership stake in the partnership in New York State.

The Scoville Affidavit failed to justify why the relevant records from the Companies House in England and Wales should not be trusted.  Ref.  Exhibits 1-8 show the Kontilai Declaration in Opposition to the MTD.

Debevoise's "explanation" that the chronology of the registration of Debevoise & Plimpton LLP in London was incidental was not persuasive.  The interaction of the Debevoise Defendants' allegations of what partnership(s) they belong to is confusing and unclear.  For example, the Reply still failed to explain why, when this case was filed on October 17, 2020, Debevoise & Plimpton was organized in England and Wales as a private non-trading company with one issued share.

However, the official records of the Companies House are undisputable.[5]  All relevant records in London have been filed in Opposition to the MTD, Exhs 2-5.  Those showed no partnership-type ownership in Debevoise & Plimpton Limited, regardless of what internal documents would have been created.[6]  Mr. Scoville's holding one share of Debevoise-London, the only registered entity under that name in England and Wales, is inconsistent with other representations.  It is either a share or a partnership's percentage (not identified in the Reply).[7] As a particular point of concern, the Reply does not attempt to submit the Company House's documents proving that Debevoise LLP existed or was allowed to do business in England in 2020.

---

[5] The registration says that it was organized as a private limited company, non-trading, with a permitted 100 shares to be issued.  At all times, only one nominal share was issued, which was non-redeemable.

[6] After the initial holder of one share resigned, the annual report for 2015 shows that James Scoville, an Affiant in this case, took over a nominal &1 (one British pound sterling) stake in that Limited Company without the right of redemption.  No further shares were issued.

[7] On September 16, 2022, Mr. Scoville and Ms. Ashton, two Affiants in this case, applied before Companies House to dissolve Debevoise & Plimpton Limited and to strike it from the English and Wales Registry.  See Exh. 7, Oppo to the MTD.  The Registry states that the strike-off date of that Limited company was December 24, 2022, and the dissolution date was March 1, 2023.

While alleging that some other partnership existed in London in 2020, the fact that it was not registered makes the allegations, based on some internal documents that were not made official, suspect.

## I. PARTICULARLY, DEFENDANTS COULD NOT RECONCILE THE RECORD IN LONDON'S COMPANY HOUSE THAT THERE ARE NO BENEFICIAL OWNERS IN DEBEVOISE PLIMPTON LLP-LONDON.

On the one hand, the Reply now says that Mr. Scoville has some "equity" in Debevoise Plimpton LLP. However, the Companies House in England makes a contrary statement. See Exh. 7 to the Opposition to the MTD. Namely, the registration filing states, on pp. 12, 16, and other pages, that the London affiliate **has no beneficial owners**, which must have included the ownership rights in the New York partnership. The firm's internal, albeit secretive, lists cannot reconcile their listing of Mr. Scoville with the official filings in the Companies House and the lack thereof.

Again, the English and Wales Registry included the warning statement concerning the actual status of the New York Partnership: **"Beneficial owners… who do not register could be fined up to &2,500 per day, be put in prison for up to 5 years"**.

As this is established in the record Mr. Scoville's Affidavit and other Affidavits do not address it or provide explanations, with the official records superseding the internal "lists" of the partners without a percentage stake.

Yet again, the fact that the officers in London have been calling themselves "partners" in New York is immaterial when no percentage stake is cited, required in the State of New York. Subject to jurisdictional discovery, the Plaintiffs proffer that the tax records 2020 will confirm that they are not partners under the laws of the State of New York, which is why they have no beneficial ownership stake in the New York Partnership, as stated in the Companies House.

**J.  WITHOUT PERCENTAGE OF THE OWNERSHIP STAKE, CLAIM TO BE A PARTNER DOES NOT COMPORT WITH THE STATUTORY REQUIREMENTS OF THE STATE AND IRS.**

At the November 8, 2023 conference, the Court indicated it was unaware of the case law requiring partners to have a percentage interest in a partnership.  However, as stated above, the official forms adopted by the New York State and the U.S. Internal Revenue Service control.

In order to prove the partners' status, all four alleged partners were expected or required to disclose what percentage stake each of those had in the New York Partnership.  Should the percentage be disclosed, which it was not, it would have contradicted the official record in England that states: "Beneficial owners: 0 active beneficial owners."

Again, the attorneys at Debevoise may call—and call—themselves as partners in their internal firm's documents.  However, the missing percentage stake of each does not make them legally partners under New York's Chapter 278, namely Section 10 – "Partnership defined." For that reason, the statute is clear: "2.  But any association formed under any <u>other statute of this state, or any statute adopted by authority, other than the authority of this state, is not a partnership under this chapter</u>, … this chapter shall apply to limited partnerships except in so far as the statutes relating to such partnerships are inconsistent herewith."

At this point, the statements made in the Reply, instead, fall under the limitations of Section 11.  'Rules for determining the existence of a partnership', to with: "In determining whether a partnership exists, these rules shall apply: 1.  Except as provided by section twenty-seven persons who are not partners as to each other <u>are not partners as to third persons</u>.  2.  Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.  3.  <u>The sharing of gross returns does not of itself establish a partnership</u>, whether or not the persons sharing them have a joint or common right or interest in any property

from which the returns are derived." Source: N.Y. Partnership Law § 11. See also the next section, N.Y. Partnership Law § 12.[8]

The Memorandum in Opposition stated: "If any of the four Affiants would claim to be true partners in a New York LLP, they would have been subject to the IRS's rigorous tax requirements.[9]" Instead of addressing that argument, the Defendants merely ignored that nor relied

---

[8] "Section 12 – 'Partnership property' 1. All property originally brought into the partnership stock or subsequently acquired, by purchase or otherwise, on account of the partnership is partnership property. 2. Unless the contrary intention appears, property acquired with partnership funds is partnership property. 3. Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name. 4. A conveyance to a partnership in the partnership name, though without words of inheritance, passes the entire estate of the grantor unless a contrary intent appears. N.Y. Partnership Law § 12"

[9] IRS's guidelines state: "Withholding on foreign partner or firm. A partnership that has foreign partners or engages in certain transactions with foreign persons may have one (or more) of the following obligations. Fixed or determinable annual or periodical (FDAP) income. A partnership may have to withhold tax on distributions to a foreign partner or a foreign partner's distributive share when it earns income not effectively connected with a U.S. trade or business. A partnership may also have to withhold on payments to a foreign person of FDAP income not effectively connected with a U.S. trade or business. See section 1441 or 1442 for more information. Withholding under the Foreign Investment in Real Property Tax Act (FIRPTA). If a partnership acquires a U.S. real property interest from a foreign person or firm, the partnership may have to withhold tax on the amount it pays for the property (including cash, the fair market value (FMV) of other property, and any assumed liability). See section 1445 for more information." Source: https://www.irs.gov/publications/p541#en_US_202203_publink1000104197. Withholding on foreign partner's effectively connected taxable income (ECTI). If a partnership has income effectively connected with a trade or business in the United States (including gain on the disposition of a U.S. real property interest), it must withhold on the ECTI allocable to its foreign partners. See section 1446(a) for more information. Withholding on foreign partner's sale of a partnership interest. A purchaser of a partnership interest, which may include the partnership itself, may have to withhold tax on the amount realized by a foreign partner on the sale for that partnership interest if the partnership is engaged in a trade or business in the United States. See section 1446(f) for more information. Withholding under the Foreign Account Tax Compliance Act (FATCA). A partnership may have to withhold tax on distributions to a foreign partner of a foreign partner's distributive share when it earns withholdable payments. A partnership may also have to withhold on withholdable payments that it makes to a foreign entity. See sections 1471 through 1474 for more information. A partnership that has a duty to withhold but fails to withhold may be held liable for the tax, applicable penalties, and interest. See section 1461 for more information."

even on the alleged existence of the tax documentation, where the existence of such partnership would have been corroborated.

### K. CASE LAW ON PARTNERSHIP REQUIRES CONCRETE EVIDENCE OF OWNERSHIP, NOT MERELY CONCLUSORY STATEMENTS IN SELF-SERVING AFFIDAVITS WITHOUT DISCLOSING OR PROVING STAKE.

Again, the relief of jurisdictional discovery is warranted where the Defendants' Reply is silent on the percentage of the stake of each of the four alleged partners, which goes to the issue here. A "partnership" is an association of two or more persons who carry on **as co-owners** a business for profit. *Brandenburger & Marx v. Heimberg*, 1942, 34 N.Y.S.2d 935. See also *Keen v. Jason*, 1959, 19 Misc.2d 538, 187 N.Y.S.2d 825, affirmed 11 A.D.2d 1039. The percentage of the ownership stake is treated as critical for the validity of a partnership. One court said allocating a 10% equity interest in a partnership as a junior partner to one of the partners was unequivocal. See *Joachim v. Flanzig*, 2004, 3 Misc.3d 371, 773 N.Y.S.2d 267. Under New York law, a limited liability partnership is a partnership, albeit one in which the partners, in most circumstances, have limited liability. See *Mudge Rose Guthrie Alexander & Ferdon v. Pickett*, 1998, 11 F.Supp.2d 449, *Institute of Physical Medicine & Rehabilitation, LLP. v. Country Wide Ins*., 2002, 193 Misc.2d 803, 752 N.Y.S.2d 232. Whether a partnership relationship exists is determined by the parties' written partnership agreement, or if the parties do not have a written agreement, objective factors evidence the parties' intent. *Joachim supra*.

The Reply failed to show the concrete beneficial interest of the four partners in London in New York LLP. See also Exh. 8 to the MTD, pp. 12, 16. A "partnership" is a contract between two or more persons to place their money, effects, labor, skill, or some or all of them in lawful commerce or business. *Boyarsky v. Froccaro*, 1984, 125 Misc.2d 352, 479 N.Y.S.2d 606. See, also, *Pattison v. Blanchard*, 1851, 5 N.Y. 186; *Manning v. Whalen*, 1940, 259 A.D. 490, 20

N.Y.S.2d 364;  *Hanlon v. Melfi*, 1979, 102 Misc.2d 170, 423 N.Y.S.2d 132.  Accordingly, these four Affiants have failed to disclose the percentage of their stake in the New York Partnership.

## CERTIFICATION UNDER LOCAL RULE 7(m).

The disclaimer is that Local Rule 7(m) may be inapplicable or unnecessary for Motions under F.R.Civ.P. 59(e).  Out of extra precaution, the undersigned certifies that he proposed a meet-and-confer and his availability to discuss it, if needed, on December 2, 2023, outlining the bases for the present Motion.

## CONCLUSION.

The present Rule 59(e) Motion should be granted, and the dismissal of the case vacated, with leave of jurisdictional discovery.

Respectfully submitted,

Date: December 5, 2023

/signed George Lambert/
George Lambert (D.C. Bar No. 979327)
The Lambert Law Firm
1025 Connecticut Ave., #1000 NW
Washington, D.C. 20036
Tel: (202) 640-1897
Fax: (800) 952-1950
LawDC10@gmail.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing has been served by email on the counsel for Defendants parties as follows:

Dane H. Butswinkas (D.C. Bar No. 425056)
David S. Blatt (D.C. Bar No. 433311)
Williams & Connolly LLP
725 Twelfth St. NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dbutswinkas@wc.com
dblatt@wc.com

Attorneys for Defendant Debevoise & Plimpton LLP


Dated: December 5, 2023

/s/ George Lambert, Esq.